THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL H. HOLLAND, et al. as Trustees of the UNITED MINE WORKERS OF AMERICA 1992 BENEFIT PLAN, | |
| Plaintiff/Counter-Defendant, | |
| v. | Civil Action No. 17-00300 (CKK) |
| ARCH COAL, INC. | |
| Defendant/Counter-Plaintiff. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT ARCH COAL, INC.'S
MOTION FOR SUMMARY JUDGMENT**

John R. Woodrum
D.C. Bar # 933457
OGLETREE, DEAKINS, NASH, SMOAK, & STEWART
1909 K Street, N.W., Suite 1000
Washington, D.C.  20006
Telephone:  (202) 887-0855
Email:  john.woodrum@ogletree.com

W. Gregory Mott
D.C. Bar # 438200
OGLETREE, DEAKINS, NASH, SMOAK, & STEWART
1909 K Street, N.W., Suite 1000
Washington, D.C.  20006
Telephone:  (202) 887-0855
Email:  gregory.mott@ogletree.com

*Attorneys for Defendant/Counter-Plaintiff*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................1

BACKGROUND .................................................................................................................2

    A.  The Coal Act .................................................................................................2

    B.  Arch Coal and its 1988 Last Signatory Operators ........................................5

STANDARD FOR SUMMARY JUDGMENT ....................................................................8

ARGUMENT ......................................................................................................................8

I.      The Coal Act Does Not Authorize the UMWA 1992 Benefit Plan to Require Security from Arch Coal ............................................................................8

    A.  The Coal Act Authorizes the 1992 Plan to Demand Security Only From a "1988 Last Signatory Operator" ..................................................................8

    B.  A "Related Person" Is Not Subject to Section 9712(d)(1)(B) ....................10

    C.  Congress Did Not Delegate the 1992 Plan Authority to Impose a Security Obligation on Related Persons ....................................................14

        1.  The Plan Document ............................................................................14

        2.  The Coal Act does not provide the Trustees authority to expand related person liability. ............................................................................15

        3.  The caselaw confirms that Coal Act provisions assigning liability are to be given their plain meaning ............................................................16

II.    The Coal Act Does Not Authorize the 1992 Plan to Require Duplicate Security from a 1988 Last Signatory Operator *and* Its Related Person ...........................19

    A.  Security Is Posted for a Limited and Specific Purpose ..............................20

    B.  The 1992 Plan Has Security That Satisfies Section 9712(d)(1)(B) of the Coal Act ....................................................................................................21

        1.  Arch could provide new security and the Plan could use the 2015 letter of credit proceeds to provide health benefits to the retirees for whose benefit it was posted ......................................................................................22

# TABLE OF CONTENTS
## (continued)

**Page**

2. Arch could provide new security and the Plan conveys the proceeds of the 2015 letter of credit to Arch for use inoffsetting the cost of providing benefits. .................................................................................................22

3. The 1992 Plan could place the proceeds from Fifth Third Bank letter of credit into an Escrow or Trust Account. ..................................................23

III. The Amount by Which the Proceeds of the Letter of Credit Exceedsthe Amount of Security Required for 2017 Must Be Used to Provide Benefits for the 1988 Signatory Operators' Retirees ...........................................................................24

A. If Section 9712(d)(1)(B) of the Act Does Not Require Arch Coal to Provide Security, then Arch is Entitled to the Amount by which the Proceeds of the Letter of Credit Exceeds the 2017 Security Requirement ...........................................25

B. If Arch Coal is Required to Provide Security to the 1992 Plan for 2017, the Plan Must Pay the Proceeds of the Fifth Third Bank Letter of Credit to Arch...........25

CONCLUSION....................................................................................................26

# TABLE OF AUTHORITIES

**Cases**                                                                                       **Page**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................................. 8

*\*Barnhart v. Sigmon Coal Co.*,
534 U.S. 438 (2002) ....................................................................................... passim

*Bellaire Corp. v. Shalala*,
995 F.Supp. 125 (D.D.C. 1997) ...................................................................... 3, 4, 6

*Celotex Corp. v. Catrett*,
477 U.S. 317 ............................................................................................................. 8

*District 29, UMWA v. United Mine Workers of Am. 1992 Benefit Plan*,
179 F.3d 141 (4th Cir. 1999) ................................................................................... 3

*Eastern Enters. v. Apfel*,
524 U.S. 498 (1998) ................................................................................................. 3

*Fawn Mining Corp. v. Hudson*,
878 F.Supp. 240 (D.D.C. 1995) ............................................................................... 3

*Fawn Mining Corp. v. Hudson*,
80 F.3d 519 (D.C. Cir. 1996) ................................................................................... 3

*Holcomb v. Powell*,
433 F.3d 889 (D.C. Cir. 2006) ................................................................................. 8

*Holland v. American Coal Co.*,
868 F. Supp. 173 (S.D. W.Va. 1994) ................................................................ 14, 15

*\*Holland v. Double G. Coal Co., Inc.*,
898 F.Supp. 351 (S.D. W.Va. 1995) .................................................................. 17, 18

*\*Holland v. Williams Mtn. Coal Co.*,
C.A. No. 96-1405, 2000 WL 284298 (CKK/JMF) (D.D.C. Feb. 24, 2000) ................ 1, 3, 4, 16

*Holland v. Williams Mtn. Coal Co.*,
236 F.3d 819 (D.C. Cir. 2001) ............................................................................... 16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ................................................................................................. 8

*Sigmon Coal Co. v. Apfel*,
33 F.Supp.2d 505 (W.D. Va. 1998) ........................................................................ 16

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Winston & Strawn, LLP v. McLean,*
   843 F.3d 503 (D.C. Cir. 2016) ................................................................. 8

**Statutes**

26 U.S.C. § 9701(c) .............................................................................. 9, 10

26 U.S.C. § 9701(c)(2)(B) ....................................................................... 6, 10

26 U.S.C. § 9711 9701(c)(2)(A)(i)-(iii) ........................................................ 9

26 U.S.C. § 9712 .......................................................................... 1, 3, 15, 17

26 U.S.C. § 9712(b)(2)(B) ........................................................................ 3, 12

26 U.S.C. § 9712(d) ................................................................................ 4, 9

26 U.S.C. § 9712(d)(1) ......................................................................... passim

26 U.S.C. § 9712(d)(1)(A), (d)(3) ................................................................. 4

26 U.S.C. § 9712(d)(1)(B) ..................................................................... passim

26 U.S.C. § 9712(d)(1)(C) ......................................................................... 20

26 U.S.C. § 9712(d)(4) ......................................................................... passim

26 U.S.C. § 9712(d)(6) .............................................................................. 9

26 U.S.C. §§ 9701-9722 ........................................................................... 1, 9

26 U.S.C. § 9712(d)(4) .............................................................................. 11

30 U.S.C. § 1232(h)(2)(B), (h)(3) ................................................................. 5

Pub. L. 109-432, 120 Stat. 2922 ................................................................... 5

**Rules**

Civil Rules 7 and 56.1 ............................................................................. 1

Fed. R. Civ. P. 1 .................................................................................. 8

Rule 56(c) of the Federal Rules of Civil Procedure .............................................. 8

**TABLE OF AUTHORITIES**
**(continued)**

**Other Authorities**                                                          **Page**

Brief of Amicus Curiae R.G. Johnson Co., Inc. in Support of Respondent
   *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438 (2002), 2001 WL 845545 ........................... 4

Development and Implementation of the Coal Industry Retiree
   Health Benefit Act of 1992 ..................................................................................................... 23

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL H. HOLLAND, et al. as Trustees
of the UNITED MINE WORKERS OF
AMERICA 1992 BENEFIT PLAN,

        Plaintiff/Counter-Defendant,

        v.

ARCH COAL, INC.

        Defendant/Counter-Plaintiff.

**ORAL ARGUMENT
REQUESTED**

Civil Action No. 17-00300 (CKK)

**MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF DEFENDANT ARCH COAL, INC.'S
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Local Civil Rules 7 and 56.1, Defendant Arch Coal, Inc., by counsel, submits

this Memorandum of Points and Authorities in Support of its Motion for Summary Judgment.

## INTRODUCTION

This case arises under the Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C. §§

9701-9722 ("Coal Act or Act").  It pertains to just one section of that law, 26 U.S.C. § 9712,

which the Court has previously construed in *Holland v. Williams Mtn. Coal Co.*,

C.A. No. 96-1405, 2000 WL 284298 (CKK/JMF) (D.D.C. Feb. 24, 2000), *aff'd*, 256 F.3d 819

(D.C. Cir. 2001).

In this case the Trustees of the United Mine Workers of America 1992 Benefit Plan

("Trustees" or "1992 Plan" or "Plan") advance a theory of Coal Act liability that flies in the face

of the text of the Act and the equities presented.  They allege that Defendant Arch Coal, Inc.

("Arch Coal" or "Arch") must provide security to the Plan in the amount of $8,382,720.

(ECF No. 1 ¶ 15).  The Complaint states that the purpose of the security is to protect the Plan

"against the event that [Arch] may fail or cease to provide the requisite [retiree health] benefits under Section 9711 of the Coal Act …, or against the event that beneficiaries attributable to [Arch under Section 9711] must be enrolled to receive their benefits from the 1992 Plan." (ECF No. 1 ¶ 11).

Yet in a stunning display of institutional amnesia, the Trustees failed to aver or disclose four critical facts: (1) the Trustees held security for the beneficiaries in question that was fully compliant with the Coal Act from 1993 through December 2015; (2) in December 2015 the Trustees drew down and cashed that security receiving $8,608,392; (3) even after the Trustees converted the letter of credit into cash, Arch continued to provide the healthcare benefits required by Section 9711 of the Act to all retirees with respect to whom the security was provided; and, (4) although the Trustees have the $8,608,392 in their possession, they have used none of it to provide benefits to the retirees for whom the security was posted.

Remarkably, having converted the $8,608,392 letter of credit into cash, and having used none of the proceeds to provide health benefits to the intended beneficiaries, Plaintiffs now ask this Court to order Arch to provide the Plan yet *another* $8,382,720 letter of credit or bond to secure the same contingency for the same people who were secured by the letter of credit the Trustees drew down in December 2015.

## BACKGROUND

### A.     The Coal Act

As this Court has previously recognized, Congress passed the Coal Act in 1992, "as a solution to decades of contentious negotiations between employers in the coal industry and the United Mine Workers of America ('UMWA') regarding the provision of [retiree] benefits to coal miners." *Williams Mtn.*, 2000 WL 284298 *1.  "Congress decided to replace the contract-based system with a comprehensive statutory system.  Under this system, 'signatories' to certain

collective bargaining agreements bear the responsibility for funding two new benefit plans –the UMWA Combined Benefit Fund and the 1992 UMWA Benefit Plan—which provide health benefits to retired coal miners." *Id.*; *see* 26 U.S.C. § 9712 (establishment and coverage of the 1992 Plan).[1]  *See also Eastern Enters. v. Apfel*, 524 U.S. 498, 504-09, 511 (1998)(relating the extensive history of the Coal Act).

The principle purpose of the 1992 Plan is to provide healthcare benefits for Coal Act "orphans".  These are retirees who were receiving benefits from a healthcare plan maintained by their last employer pursuant to Section 9711 of the Act, but whose last signatory operator and any related person become financially unable to provide coverage.  *See* 26 U.S.C. § 9712(b)(2)(B).  *District 29, UMWA v. United Mine Workers of Am. 1992 Benefit Plan,* 179 F.3d 141, 143 (4th Cir. 1999)("the [Coal] Act created the 1992 Benefit Plan as a "backstop" for those not receiving coverage under the first two mechanisms."); *Bellaire Corp. v. Shalala*, 995 F.Supp. 125, 130 (D.D.C. 1997) (Congress established the 1992 Plan "as a safety net to provide health benefits to [retirees] who should receive coverage under an individual employer plan but do not.")

The Coal Act's 1992 Plan provisions were drafted at the extreme tail end of contentious deliberations and only after other "extremely controversial" legislative fixes, including an industry-wide tax, had already failed to obtain consensus.  *See, e.g., Williams Mtn.*, 2000 WL 284298 *1; *Barnhart v. Sigmon Coal Co.,* 534 U.S. 438, 446 (2002) (citing secondary sources detailing coal bill's final emergence in July 1992); Brief of Amicus Curiae R.G. Johnson Co., Inc. in Support of Respondent Sigmon Coal, 2001 WL 845545, Ex. A at 12a, 37a (Senate

---

[1]  The UMWA Combined Benefit Fund is a separate multiemployer plan created by the Act that is not at issue in this litigation.  *See, e.g., Fawn Mining Corp. v. Hudson*, 878 F.Supp. 240 (D.D.C. 1995), *aff'd*, 80 F.3d 519 (D.C. Cir. 1996) (applying Coal Act's plain language to allocate retirees to the 1992 Plan instead of the Combined Fund).

Legislative Counsel version of the draft bill two days before the Coal Act's text was finalized on July 29, 1992 noting the 1992 Plan provisions need to be supplied).

Against this backdrop, Congress provided funding for the health benefits provided by the 1992 Plan in several ways.  Among other things, the Act authorizes the Trustees to assess the responsible employer a monthly premium for each retiree receiving benefits from the 1992 Plan, if it was the last company to employ the individual under a UMWA labor agreement. 26 U.S.C. § 9712(d)(1)(A), (d)(3).  The Act also authorized the Trustees to assess all operators that were signatory to a 1988 coal wage agreement a pro-rated premium to pay for the benefits of the "orphan" retirees in the Plan who have no employer to provide their benefits. *Id*. at (d)(1)(C). *See, e.g., Williams Mtn.*, 2000 WL 284298 **1-2 ("Section 9712(d) provides that the 'last signatory operators' are responsible for financing the benefits provided by the 1992 Plan based on the number of eligible beneficiaries attributable to each operator."); *Bellaire Corp.*, 995 F.Supp. at 130 ("The premiums paid by the 1988 NBCWA signatories and NBCWA signatories whose former employees receive benefits from the 1992 Plan will provide the financing for the 1992 Plan.")  The Act additionally provided that any "related person" to a last signatory operator is jointly and severally liable for the required premiums. 26 U.S.C. § 9712(d)(4).

To mitigate the impact on the pool of operators who were required to assume financial responsibility for the beneficiaries of a 1988 last signatory operator who goes out of business post-enactment, the Act provides that each 1988 last signatory operator must provide security

against the possibility that it might dump its Coal Act beneficiaries into the 1992 Plan. 26 U.S.C. § 9712(d)(1)(B).[2]

### B.      Arch Coal and its 1988 Last Signatory Operators[3]

In 1992, Arch Coal, Inc. was the corporate parent of many companies involved in coal mining and other coal-related businesses, including subsidiaries that were signatory to the 1988 National Bituminous Coal Wage Agreement ("NBCWA").    Affidavit of John W. Lorson, appended hereto as Exhibit 1; SMF ¶ 1.  Section 9711 of the Act required these "1988 last signatory operators" to provide healthcare benefits to their UMWA retirees and dependents who satisfied the Act's eligibility requirements, and Section 9712(d)(1) required them to pay certain premiums to the UMWA 1992 Plan and to provide security in an amount determined each year by the Trustees of the Plan.  26 U.S.C. § 9712(d)(1).

---

[2]   During the 14 years from the Act's passage in 1992 until it was amended in December 2006, the security provided by a 1988 last signatory operator mitigated the financial impact on other 1988 last signatory operators in the event the operator went out of business.  This is because the remaining financially viable 1988 signatory operators were required to pay prefunding premiums to cover the healthcare costs for all 1992 Plan "orphans".  The 2006 Amendments to the Coal Act and to the Surface Mining Control and Reclamation Act, provided that specified Federal funds would be transferred to the 1992 Plan for use in covering the cost of providing health benefits to all orphan beneficiaries in the Plan.  *See* Tax Relief and Health Care Act of 2006, Pub. L. 109-432, 120 Stat. 2922.  *See also* 30 U.S.C. § 1232(h)(2)(B), (h)(3).  Thus, beginning in 2007, any security foreclosed on by the Plan would benefit the Federal government, because the Federal government would not have to transfer money to the 1992 Plan for an operator's newly-orphaned retirees until the security provided on their behalf had been exhausted.

The 2006 Amendments did not eliminate the 1988 last signatory operators' responsibility to pay for orphan retirees' healthcare.  Rather, the Amendments replaced the "prefunding premium" the Plan assessed from 1993-2006 with the concept of a "backstop premium".  This backstop premium is triggered in the event the amount of Federal money available for transfer is not sufficient to cover the cost of providing health benefits to all 1992 Plan orphans.  *See* 26 U.S.C. § 9712(d)(1)(C).

[3]   Except as otherwise noted, each factual statement in this Memorandum is documented in Defendant's Statement of Material Facts as to which Defendant contends there is No Genuine Issue.  Citations will be to the supporting paragraph in the Statement of Material Facts ("SMF").

In view of its numerous subsidiaries that were 1988 last signatory operators, and the substantial amount of security required, Arch Coal initially arranged for the provision of a bond to the 1992 Plan to satisfy its subsidiaries' security requirements under Section 9712(d)(1).  The bond was later converted to a letter of credit.  SMF ¶ 6.

In December 2005, Arch Coal completed the sale of a portion of its mining business to Magnum Coal Company ("Magnum") - - including those subsidiaries that were 1988 last signatory operators.  SMF ¶ 7.  Among other things, that transaction required the buyer to replace the security Arch had previously arranged for the 1988 last signatory operators required by Section 9712(d)(1) of the Act.  SMF ¶ 8.

In July 2008, Patriot Coal Corporation ("Patriot") acquired Magnum, at which time it became the new parent corporation of the 1988 last signatory operators that were subsidiaries of Arch Coal on the statutory July 20, 1992 "related person" determination date. 26 U.S.C. § 9701(c)(2)(B).  SMF ¶ 9.  On or about July 15, 2008, Patriot amended an existing letter of credit provided by Fifth Third Bank to add the Coal Act security obligations attributable to the former Arch Coal subsidiaries that Patriot acquired in the Magnum transaction.  *See* Exhibit 2; SMF ¶ 10.[4]

On May 12, 2015, Patriot and its subsidiaries – including those 1988 last signatory operators that were related persons to Arch – filed for bankruptcy.  *In re Patriot Coal Corp.*, 15-32450 (KLP) (Bankr. E.D. Va. 2015) (Dkt. No. 1).  Ultimately, the assets of Patriot and its subsidiaries were sold to various purchasers free and clear of any liability, including their Coal Act obligations.  *Id.*, *See Notice of (I) Confirmation of the Debtors' Chapter 11 Plan of Reorganization, (II) Occurrence of the Effective Date, and (III) Related Bar Dates*

---

[4]   Plaintiffs acknowledge that Exhibit 2, which was provided by Plaintiffs in discovery, is missing page 2.  *See* Plaintiffs' Request for Admissions No. 1, appended hereto as Exhibit 3.

(Dkt. No. 1751).  In October 2015, the bankruptcy court terminated the 1988 signatory operators' Coal Act obligations, including the obligation to provide healthcare benefits to their Section 9711 Coal Act retirees.  SMF ¶ 12.  On October 15, 2015, Arch informed the 1992 Plan that, as required by Section 9711(c) of the Coal Act, it would assume responsibility for providing health benefits to the eligible retirees of the bankrupt 1988 signatory companies with respect to whom it was a related person.[5]  SMF ¶ 13.

On December 10, 2015, the 1992 Plan served notice on Fifth Third Bank that it was drawing the full amount of the $8,608,392 letter of credit the bank had provided to the Plan to secure benefits for the 1988 last signatory companies' retirees.  *See* Exhibit 4; SMF ¶ 19.  The bank subsequently paid the proceeds of the letter of credit to the Trustees.  Plaintiffs' Answers to Interrogatories, Exhibit 5, Answer to Interrogatory No. 2.  The 1992 Plan did not enroll any person for whom the 1988 last signatory operators provided benefits pursuant to Section 9711 of the Act, nor has it used any proceeds from the letter of credit to provide benefits on their behalf. Exhibit 5, Plaintiffs' Answers to Interrogatories 2, 3, 7; SMF ¶¶ 16, 23.

This notwithstanding, by letter dated February 1, 2017, the General Counsel of the Plan, demanded that Arch Coal provide security in the amount of $9.6 million with respect to the Section 9711 Coal Act beneficiaries for whom Arch assumed coverage after the 1988 signatory operators' bankruptcy.  *See* Exhibit 6; SMF ¶ 24.  By letter of February 6, 2017, counsel for Arch Coal informed the Plan that Arch was providing health benefits to 919 retirees and eligible dependents pursuant to Section 9711(c), that the security previously provided on behalf of these Coal Act retirees exceeded the amount the Trustees had established for 2017, and that the excess

---

5   As the result of unprecedented market and financial conditions confronting the U.S. coal industry, Arch Coal filed for bankruptcy on January 11, 2016.  *In re Arch Coal, Inc.*, 16-40120 (CER) (Bankr. E.D. Mo.) (Dkt. No. 1); SMF ¶ 21.  Arch did not seek to extinguish its Coal Act related person obligations in its bankruptcy proceeding.  SMF ¶ 22.

security should therefore be conveyed to Arch.  *See* Exhibit 7; SMF ¶ 25.  The Plan did not respond, and filed this suit on February 16, 2017.

## STANDARD FOR SUMMARY JUDGMENT

Rule 56(c) of the Federal Rules of Civil Procedure allows the court to grant summary judgment "if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  It is an integral part of the Federal Rules designed "'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 and 330 (1986) (quoting Fed. R. Civ. P. 1).  A fact is "material" if it is capable of affecting the substantive outcome of the litigation.  *Holcomb v. Powell,* 433 F.3d 889, 895 (D.C. Cir. 2006).  The non-movant "must present affirmative evidence in order to defeat a properly supported motion for summary judgment," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986), and "the mere existence of a scintilla of evidence in support" of the non-movant's position "will be insufficient".  *Id.* at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'general issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 507-09 (D.C. Cir. 2016).

The material facts of this case are not in dispute.  The only questions to be resolved are strictly issues of law; therefore, summary disposition is appropriate.

## ARGUMENT

**I.    The Coal Act Does Not Authorize the UMWA 1992 Benefit Plan to Require Security from Arch Coal**

### A.    The Coal Act Authorizes the 1992 Plan to Demand Security Only From a "1988 Last Signatory Operator"

Section 9712 of the Coal Industry Retiree Health Benefit Act of 1992 established the UMWA 1992 Plan, and contains all provisions relating to its operation and authority.  This

includes the "Guarantee of benefits" requirement at Section 9712(d), which houses the only Coal

Act provision that refers to posting security to the 1992 Plan.  The controlling statutory language

states in pertinent part:

>    (d)    Guarantee of benefits. —
>
>        (1) In general.—*All 1988 last signatory operators* shall be responsible for financing the benefits described in subsection (c) by meeting the following requirements in accordance with the contribution requirements established in the 1992 UMWA Benefit Plan:
>
> • • •
>
>        (B)    The provision of a security (in the form of a bond, letter of credit or cash escrow) in an amount equal to a portion of the projected future cost to the 1992 UMWA Benefit Plan of providing health benefits for eligible and potentially eligible beneficiaries attributable to the 1988 last signatory operator.

26 U.S.C. § 9712(d)(1) (emphasis added).

It is significant --and dispositive of Plaintiffs' claim in this case-- that the security

obligation set forth in Section 9712(d)(1)(B) is imposed only on *1988 last signatory operators*.

This is because subsection (d)(6) defines who is a "1988 last signatory operator", and that

definition does not include Arch Coal.  Section 9712(d)(6) specifies:

>    (6)    1988 last signatory operator. — For purposes of this section, the term "1988 last signatory operator" means a last signatory operator which is a 1988 agreement operator.

This definition of "1988 last signatory operator" builds on the general Coal Act

definitions set out in Section 9701 ("Definitions of general applicability").  Section 9701(c)

provides in relevant part:

>    (c)    Term relating to operators. —For purposes of this section —
>
>        (1)    Signatory operator.—The term "signatory operator" means a person which is or was a signatory to a coal wage agreement.
>
>        (2)    Related person.—A person shall be considered to be a related person to a signatory operator if that person is —

> > (i)    a member of the controlled group of corporations (within the meaning of Section 52(a)) which includes the signatory operator; …
>
> (3)    1988 agreement operator.—The term "1988 agreement operator" means—
>
> > (A) a signatory operator which was a signatory to the 1988 National Bituminous Coal Wage Agreement …

26 U.S.C. § 9701(c).

Defendant Arch Coal, Inc. has never been signatory to a National Bituminous Coal Wage Agreement ("NBCWA") or any coal wage agreement with the UMWA.  SMF ¶ 4.  It is therefore not a 1988 agreement operator, or a 1988 last signatory operator, and it is not an entity that Congress made subject to the security obligation described in Section 9712(d)(1)(B).

## B.    A "Related Person" Is Not Subject to Section 9712(d)(1)(B)

Arch Coal is not a signatory operator, but it is a "related person" to several 1988 last signatory operators.  This is because certain Arch subsidiaries were signatory to the 1988 NBCWA as of July 20, 1992, the date specified in Section 9701(c)(2)(B) for establishing related person status with a signatory operator. 26 U.S.C. § 9701(c)(2)(B); § 9712(d)(4).

The Coal Act makes a related person jointly and severally liable for certain obligations imposed on signatory operators.  These include the obligation to pay premiums to the UMWA Combined Benefit Fund (Section 9704(a)), the obligation to provide benefits to a 1988 signatory company's Coal Act retirees (Section 9711(c)), and certain obligations to the 1992 Plan (Section 9712(d)(4)).   With respect to a related person's obligations to the 1992 Plan, Section 9712(d)(4) provides in pertinent part:

> (4)    Joint and several liability.—A 1988 last signatory operator or last signatory operator described in paragraph (3), and any related person to any such operator, shall be jointly and severally liable with such operator *for any amount required to be paid by such operator* under this section.

26 U.S.C. § 9712(d)(4) (emphasis added).  *See, e.g., Sigmon Coal,* 534 U.S. at 448 n. 11 (related persons are "jointly and severally responsible for any amounts due…").

Section 9712(d)(1) requires 1988 last signatory operators to pay two different premiums to the 1992 Plan.  First, subparagraph (d)(1)(A) requires "payment of a monthly per beneficiary premium by each 1988 last signatory operator for each eligible beneficiary of such operator who is described in subsection (b)(2) and who is receiving benefits under the 1992 UMWA Benefit Plan."  Twenty five individuals who last worked for a 1988 last signatory operator for whom Arch is jointly and severally responsible as a related person currently receiving benefits from the 1992 Plan.  (ECF No. 1  ¶ 14).  It is undisputed that Arch has paid premiums to the 1992 Plan for these 25 individuals effective as of the date the Patriot bankruptcy court relieved the 1988 signatory companies of their Coal Act obligations.  SMF ¶ 16.

Second, subparagraph (d)(1)(C) provides that if the Federal government fails to make certain transfer payments to the 1992 Plan, each 1988 last signatory operator is responsible for the "payment of an additional backstop premium" which "is equal to such operator's share of the amounts required to be transferred but which were not so transferred".  As a related person, Arch is responsible for paying these backstop premiums to the 1992 Plan because its former (now defunct) subsidiaries were relieved by the Patriot bankruptcy court of the obligation to do so.

In contrast to the premiums required to be paid in subparagraphs (d)(1)(A) and (d)(1)(C), the provision of security under (d)(1)(B) is not an "amount required to be paid by such operator under this section."  By definition, providing a bond or letter of credit referenced in subsection (d)(1)(B) is not a payment to the Plan; its sole purpose is to secure the 1988 last signatory operator's obligation to provide healthcare benefits for its own retirees.  Indeed, the security

referenced in Section 9712(d)(1)(B) is never paid to the Plan unless a 1988 signatory operator fails to provide benefits to those retirees for whom it is responsible under Section 9711.

Not only is the language Congress used in Section 9712(d)(1) and (d)(4) clear that the security requirement in subsection (d)(1)(B) does not apply to related persons, it makes perfect sense. The 1992 Plan functions principally as an "orphan" benefit plan. It provides a vehicle for delivering healthcare benefits to eligible Coal Act retirees who would otherwise lose coverage if their responsible employer (and any related persons) were to go out of business. Section 9712(b)(2)(B) provides that in the event a 1988 last signatory operator (and its related persons) cease to provide benefits for the signatory operator's own Coal Act-eligible retirees, those retirees will be enrolled in the 1992 Plan. As explained in note 2, *supra*, the original legislation enacted in 1992 provided that the healthcare costs of "orphan" retirees in the Plan would be paid through the assessment of a so-called "prefunding premium" against the remaining 1988 last signatory operators on a pro rata basis. The fact that the burden of paying for "orphan" benefits fell on the 1988 signatory companies and their related persons informs our understanding as to why related persons would object to also being subject to a mandatory security requirement.

Many signatory coal companies subject to the 1992 Act were standalone operators. They were not part of a controlled group, and therefore had no affiliated company that could assume responsibility for their eligible retirees' health benefits if they went out of business. Recognizing this, Congress included in Section 9712(d)(1) a requirement that each 1988 signatory operator must post some amount of security to lessen the financial impact on the remaining 1988 signatory operators who would have to shoulder the prefunding premium burden if a defunct signatory operator's retirees were dumped into the Plan.

Significantly, Section 9711(c) provides that related persons are the first backstop for a 1988 signatory operator's healthcare obligations.  As happened in this case, when a 1988 signatory operator went bankrupt, the burden of financing its retirees' healthcare fell on its related person - - Arch Coal - -  not the 1992 Plan (even though Arch had severed its relationship with all of the signatory companies a decade earlier.)  It would therefore have been surplusage to also impose a security requirement on related persons.  Indeed, by requiring a related person to provide healthcare benefits in the event a signatory affiliate became unable to do so (as happened here), Section 9711(c) provides far better security to the Plan.  Moreover, in the event a related person should ever become financially unable to comply with its own statutory obligation to provide benefits, the 1992 Plan would still have access to security provided by the 1988 last signatory operator.

When viewed against the backdrop of the various financing components of Section 9712(d)(1), it is completely logical that Congress would make related persons responsible for a 1988 last signatory operator's *premium* obligations - - but not the signatory employer's *security* obligation.  *See Sigmon Coal,* 534 U.S. at 460-61 (2002) ("Where the statutory language is clear and unambiguous, we need accept nor reject a particular explanation for why Congress would have written a statute that imposes liability on the successor of the companies that fall within the categories of §§ 9701(c)(2)(A)(i)-(iii) but not on successors to the signatory operators themselves.…[The Coal Act's] delicate crafting reflected a compromise amidst highly interested parties attempting to pull the provisions in different directions.  As such a change in any individual provision could have unraveled the whole.")

13

**C.      Congress Did Not Delegate the 1992 Plan Authority to Impose a Security Obligation on Related Persons**

**1.      The Plan Document.**

Plaintiffs assert that Article XI of the United Mine Workers of America 1992 Benefit Plan Agreement and Declaration of Trust ("Plan Document") supports the Trustees' authority to impose a security obligation on a related person such as Arch Coal.   (ECF No. 1 ¶ 11). Article XI(4) of the Plan Document provides in pertinent part:

> ARTICLE XI. (Financing Requirements)
>
> **. . .**
>
> (4)      Each 1988 Last Signatory Operator shall provide to the Trust a bond, letter of credit or amount held in escrow (or any combination thereof) meeting the following conditions….

Plan Document, Article XI, p. 10-11 (appended as Exhibit 8).

Although this particular language is consistent with Section 9712(d)(1)(B) of the Coal Act, paragraph (10) of Article XI is not.  It provides that a Related Person shall be treated as the 1988 signatory operator for *any* obligation imposed under Article XI of the Plan Document.

> (10)      Any person that is a Related Person with respect to a Last Signatory Operator or 1988 Last Signatory Operator shall be treated as such Operator and shall be jointly and severally liable with such Operator for any obligation imposed under this Article.

*Id.*

This language purports to merge the identity of a separate non-signatory entity with the last signatory operator.   In effect, it substitutes "related person" for "1988 last signatory operator".  This is an unwarranted and unauthorized expansion of Section 9712(d)(4), which is more limiting because it imposes joint and several liability on related persons only "for any amount required to be paid by such [1988 last signatory] operator under this section."

14

The Plan Document does not have the force of the federal statute, and it must yield to the statute where it conflicts with the Coal Act's plain language.  *See, e.g., Holland v. American Coal Co.*, 868 F. Supp. 173, 175 (S.D. W.Va. 1994). ("Even if Article XII of the [UMWA Combined Benefit Fund] Trust Document and section 9704 of the Coal Act were construed by this court as conflicting, the federal statute would control, based on well-known principles of statutory construction . . . .").

> ### 2.      The Coal Act does not provide the Trustees authority to expand related person liability.

The Coal Act does not delegate to the Trustees authority to impose obligations on related persons greater than Congress authorized.  Although Section 9712(d)(1) provides that "[a]ll 1988 last signatory operators shall be responsible for financing the benefits described in subsection (c) …in accordance with the contribution requirements established in the 1992 Benefit Plan" this delegation is limited to *contribution requirements*.  As discussed above, providing security is not a contribution requirement.  The Trustees acknowledge the distinction between paying contributions and providing security in paragraph (1) of Article XI of the Plan Document.  *Id.* at ¶ 1.  ("Each Last Signatory Operator, 1988 Last Signatory Operator and Related Person *shall pay to the Trustees the contributions required* of it under section 9712 of the IRC and this Article, *and shall provide the Trust with any security required* under such Act and this Article.") (emphasis added).

Had Congress intended to make related persons jointly and severally responsible for every obligation imposed on 1988 last signatory operators, it could have easily done so.  For example, the drafters could have written the joint and several liability language in Section 9712(d)(4) to say, "Related Persons shall be jointly and severally liable for a signatory operator's obligations under this Section", or mimicked the language in Section 9711(c)

(*e.g.,* Congress could have said in 9712(d)(4) "Each related person of a last signatory operator shall be jointly and severally liable with the last signatory operator for the financing requirements described in subsection (d)(1)").  Indeed, Congress could have used the very language that appears in paragraph (10) of the Plan document, but it did not.  *See Sigmon Coal,* 534 U.S. at 454 ("Congress wrote the statute in a manner that provides for liability only for successors in interest to *certain* signatory operators.  If Congress meant to make a preenactment successor in interest like Jericol liable, it could have done so clearly and explicitly.")  (emphasis in original)).  In *Williams Mountain*, this Court likewise recognized that "section 9711(g) provides that certain successors to last signatory operators are also liable for contributions", rejecting the 1992 Plan's argument that "the Coal Act uses 'successors' and 'successors in interest' interchangeably."  *Williams Mtn.*, 2000 WL 284298 *2.  On appeal, the D.C. Circuit rejected the Trustees' argument that this Court's narrow interpretation was erroneous and inconsistent with the Coal Act's purpose.  *Williams Mtn.*, 236 F.3d at 823.

### 3. The caselaw confirms that Coal Act provisions assigning liability are to be given their plain meaning.

The Supreme Court recognized in *Sigmon Coal* that unambiguous language in the Coal Act is to be given its plain meaning even when that leads to a counter-intuitive result.  *Sigmon Coal*, 534 U.S. at 459.  The Court framed the issue in *Sigmon Coal* as "whether the Coal Act permits the Commissioner [of Social Security] to assign retired miners to the successor in interest of out-of-business signatory operators."  *Id.* at 442.  Plaintiffs' claim here presents an analogous question - - does the Coal Act permit the Trustees to require the related person of a 1988 last signatory operator that has gone out of business to provide security with respect to the signatory's Coal Act retirees?

In *Sigmon Coal*, the Commissioner of Social Security assigned Coal Act premium responsibility for 86 retired miners to Jericol Mining Company, which had purchased the assets of a UMWA signatory company in 1973.  *Id.* at 448.  The courts below had concluded that the classification scheme in the Act did not provide "for liability to be laid at the door of successors of defunct signatory operators."  *Id.* at 449 (quoting *Sigmon Coal Co. v. Apfel*, 33 F.Supp.2d 505, 509 (W.D. Va. 1998)).  The Court concluded that "[t]he statutory text instructs that the Coal Act *does not permit* the Commissioner to assign beneficiaries to the successor in interest of a signatory operator."  *Sigmon Coal*, 534 U.S. at 450 (emphasis in original).

The Court's closing observation is particularly relevant to Plaintiffs' claim in the instant case:

> The Commissioner's final argument is that even if the Coal Act did not affirmatively provide that responsibility for combined fund premiums may be imposed on a signatory's direct successor, it was reasonable for the Commissioner to conclude that direct successors of a signatory operator should be responsible for the operator's employees.  Congress, however, did not delegate authority to the Commissioner to develop new guidelines or to assign liability in a manner inconsistent with the statute.  In the context of an unambiguous statute, we need not contemplate deferring to the agency's interpretation.

*Id.* at 462.

The court in *Holland v. Double G. Coal Co., Inc.,* 898 F.Supp. 351 (S.D. W.Va. 1995), applied a similar analysis.  In *Double G*, the 1988 signatory operator went out of business in 1991 and ceased providing benefits to its Section 9711 retirees.  The 1992 Plan enrolled the retirees and sued for premiums.  The employer defended on the basis that the Act did not require out of business companies to pay premiums.  The operator argued that Congress included an out-of-business requirement in Sections 9706 and 9711 of the Act and such a requirement should be inferred in Section 9712.  *Id.* at 354.  The court concluded that the presence of an in-business

requirement in other statutory provisions did not provide a basis for reading an in-business requirement into Section 9712:

> Thus, Congress specifically exempted companies no longer in business from some sections of the Coal Act, but not others. The duty of this court is to give effect to the plain meaning of the statute, not to pass judgment on its wisdom or fairness.…[W]e must assume that if Congress had intended to exempt companies no longer in business from all of the Coal Act, if would have so indicated. Instead, it exempted such companies from some provisions of the Act, but not others. Section 9712 contains no such exemption and this court declines to change the plain meaning of that statute by writing such an exemption into it.

*Id.* at 355.

The *Double G* court noted that "exempting companies no longer in business from some parts of the Coal Act and not others may well represent a legislative compromise necessary to obtain the passage of a remedial bill." *Id. See also Sigmon Coal*, 534 U.S. at 461. Similarly, the fact Congress did not in Section 9712(d)(4) impose joint and several liability on related persons for all obligations of a 1988 signatory operator may well represent a legislative compromise. It is well established that the "Coal Act was passed amidst a maelstrom of contract negotiations, litigation, strike threats, a Presidential veto of the first version of the bill and threats of a second veto, and high pressure lobbying, not to mention wide disagreements among Members of Congress." *Sigmon Coal*, 534 U.S. at 445-46. Moreover, the Supreme Court cautioned that "a change in any individual provision could have unraveled the whole." *Id.* at 461.

It is certainly plausible that in the legislative debate non-signatory corporate parents of the 1988 NBCWA signatories would have resisted an attempt to encumber their corporate assets and remove them from productive investment for decades on the premise that collateral was needed to protect against the possibility of their own future demise. Indeed, at the time the Coal Act was being deliberated, non-signatory corporate parents could not know or even estimate how large the security requirement would be. Confining this obligation to the signatory companies

that had employed the retirees could well have been an important issue.  After all, the newly-created statutory benefit plans were already authorized to ignore corporate separateness for purposes of holding these same corporate parents responsible for their coal subsidiaries' premium delinquencies.  Under the circumstances, security beyond that required from the 1988 signatories themselves could have been seen as unnecessary and overreaching.  *Sigmon Coal*, 534 U.S. at 459 n.16 ("Congress expressly delineated those parties to which it sought to attach responsibility.").  This point is reinforced by the fact that Congress imposed a security requirement on 1988 signatory operators, but not on 1978 and 1984 NBCWA signatory operators, even though those operators are also required to pay premiums to finance the Plan.  *See* 26 U.S.C. § 9712(d)(3).

For the reasons noted in *Sigmon Coal* and *Double G*, Plaintiffs cannot rely on language in their Plan Document to expand the universe of entities with respect to whom they may compel the posting of security required by Section 9712(d)(1)(B).  The 1992 Plan's claim in this case that Arch Coal must provide $8,382,720 in security must be rejected, because the Coal Act does not authorize the Plan to assign greater obligations to Arch Coal than Congress saw fit to impose.

## II.    The Coal Act Does Not Authorize the 1992 Plan to Require Duplicate Security from a 1988 Last Signatory Operator *and* Its Related Person

Even assuming that the Coal Act's plain language does not bar the 1992 Plan from demanding security from a Coal Act "related person", this is not a case where the 1988 signatory operator failed to provide security.  The Plan held a letter of credit which provided adequate security with respect to the 1988 last signatory operators' retirees until December 2015, at which time the Trustees converted it into cash.

Article XI(10) of the Plan Document specifies that a related person "shall be treated as such [1988 last signatory] Operator" for any obligation imposed under this Article.  A related

person surely cannot be required to pay premium obligations that a signatory operator has already paid. Similarly, a related person cannot be required to provide security that has already been provided. In this case, the security the 1988 last signatory operators previously provided is greater than the amount the Plan requires for 2017. Accordingly, there is nothing for the Defendant to "pay" to Plaintiffs, and their claim must be dismissed.

### A. Security Is Posted for a Limited and Specific Purpose

The Coal Act speaks directly and unambiguously to the purpose of the security requirement Congress imposed in Section 9712(d)(1):

> (B)     The provision of a security…in an amount equal to a portion of the projected future cost to the 1992 UMWA Benefit Plan of *providing health benefits for eligible and potentially eligible beneficiaries attributable to the 1988 last signatory operator.*

26 U.S.C. § 9712(d)(1)(B) (emphasis added).

The sole reason for the security requirement is so the 1992 Plan can use the proceeds to defray the cost of providing health benefits for the beneficiaries of a 1988 last signatory operator, should that ever become necessary. Although the language says it is intended to offset the projected cost to the 1992 Plan of providing health benefits to Section 9711 retirees who become "orphaned," the purpose is really to protect those parties that are required to underwrite the Plan's expenditures. For purposes of this case, the salient fact is that the security is to mitigate the cost the 1992 Plan (and those who finance the Plan) will incur if a 1988 last signatory operator fails to provide benefits to *its* Coal Act retirees. Security is not provided for any other purpose. It is not a "contribution" to the Plan, and it is not available for the Trustees to spend as they see fit.

### B. The 1992 Plan Has Security That Satisfies Section 9712(d)(1)(B) of the Coal Act

As of December 2015 the Plan held a letter of credit for $8,608,392 issued by Fifth Third Bank to secure health benefits for the very retirees for whom Arch Coal currently provides coverage. Assuming for purposes of this case that Plaintiffs were lawfully entitled to draw down the letter of credit due to the bankruptcy of Patriot and the 1988 signatory operators on whose behalf it was posted, the Trustees had two options for handling the proceeds: (1) they could have used it to provide healthcare for the intended beneficiaries, or (2) they could have siloed the proceeds in a trust or escrow to serve as prospective security, in the event that Arch should fail to provide benefits to the retirees in question. The one thing the Trustees did not have authority to do is use the proceeds for an unrelated purpose, such as paying the Plan's administrative expenses or paying the healthcare costs of *other* employers' retirees.

The Plan Document reinforces this restriction on when security may be paid to the Plan. *See* Exhibit 8, Article XI(4)(G), Plan Document at p. 12. ("Any bond, letter of credit or cash escrow described in this section shall be paid to the Trust in the event that the 1988 Last Signatory Operator fails to meet its obligation to provide benefits required under section 9711 of the IRC.") the Plan Document provides that "a Related Person with respect to a…1988 Last Signatory Operator shall be treated as such Operator." Plan Document at Article XI(10). Thus, Arch Coal is treated the same as the 1988 last signatory operators, and has provided benefits to its former subsidiaries' retirees at all times after the bankruptcy court extinguished their Coal Act liability. Accordingly, the letter of credit cannot be paid to the Plan, because it has never provided their benefits. Rather, the proceeds from the letter of credit must be held in a separate escrow or trust account, in the event the 1992 Plan *may* have to enroll the retirees at some future time. Under these circumstances, the letter of credit proceeds could be handled in several ways.

### 1. Arch could provide new security and the Plan could use the 2015 letter of credit proceeds to provide health benefits to the retirees for whose benefit it was posted.

If this Court concludes that Plaintiffs may require Arch Coal to provide security to the Plan for 2017 in the amount of $8,382,720, then the Plan must also use the proceeds from the Fifth Third Bank letter of credit to provide benefits to the secured beneficiaries. Otherwise, the Plan would hold double security for the same Section 9711 retirees and dependents. This result is not envisioned or allowed by the Act or by the Plan Document.

Under this scenario, Arch would post the required security, and the Plan would use the letter of credit proceeds to provide benefits for the 919 individuals for whom Arch is responsible as a related person. The Plan would inform Arch when the security has been exhausted, at which time Arch would resume coverage as required by Section 9711(c). Although awkward and convoluted, this would be a viable way to accommodate the financing requirements in Section 9712(d)(1) of the Act.

### 2. Arch could provide new security and the Plan conveys the proceeds of the 2015 letter of credit to Arch for use in offsetting the cost of providing benefits.

While similar to Option 1, this approach is not as disruptive to the beneficiaries because Arch would continue to provide their healthcare coverage as it has done since November 2015. The Plan Document provides for a return of security in this situation. The universe of retirees potentially eligible for benefits from their 1988 last signatory employer (and related persons) was fixed as of September 30, 1994. *See* Section 9711(a),(b). As a result of mortality, the eligible group will decline over time, and the amount of required security will also decline. *See, e.g.,* 104-3 House Committee on Ways and Means, Development and Implementation of the Coal Industry Retiree Health Benefit Act of 1992, 104th Cong., 1st Sess., 34 ("The number of beneficiaries can be expected to rise somewhat before it begins to decline as a result of

mortality.").  To accommodate this, the Plan Document provides at Article XI(4)(F) that if the

Section 9712(d)(1) security requirement is satisfied by establishing an escrow account, then:

> (IV)    To the extent that any amount (derived from a 1988 Last Signatory
> Operator's contributions and any interest or earnings thereon) held by a
> trust described in paragraph (I) exceeds the amount required under
> subsection (D)…such amount may be used to pay the obligations of the
> plan maintained by such Operator [*e.g.*, Arch Coal] under Section 9711 of
> the IRC.

Applying this rationale, if Arch provides replacement security (as the Trustees demand in

their Complaint), the proceeds of the Fifth Third Bank letter of credit would be excess security

available "to pay the obligations of the plan maintained by [Arch] under Section 9711 of the

IRC."

### 3.    The 1992 Plan could place the proceeds from the Fifth Third Bank letter of credit into an Escrow or Trust Account.

This is not only the simplest solution, it is the one required by the Act.  The 1992 Plan

has always held security for the 1988 last signatory operators' retirees, and, as it is required to do

under Section 9711(c), Arch Coal has provided the retirees' healthcare benefits after the

signatory companies' bankruptcy.  The 1992 Plan has never provided benefits to these retirees.

Thus, through their unilateral action in December 2015 the Trustees effectively converted

security in the form a letter of credit into a cash security.   As Plan fiduciaries, it was the

Trustees' obligation to place the proceeds into an escrow or trust account restricted to the

statutory purpose for which the security was provided.

Indeed, the Coal Act provides that a cash escrow account is a Coal Act-compliant method

for providing security.  Section 9712(d)(1)(B) (security "in the form of a bond, letter of credit, or

cash escrow").  Had the 1988 signatory operators provided security in the form of a cash escrow

in the first instance, the Plan would be in essentially the same position it is now - - holding cash

as security for providing benefits for the retirees in question.

The Plan Document already provides for this very outcome.  It states that a 1988 Last Signatory Operator shall provide the 1992 Plan "a bond, letter of credit, or amount held in escrow (or any combination thereof)".  Article XI(4).  And paragraph (4) further provides at subparagraph (F)(I) that:

> (I)    An amount held in escrow meets the requirements of this subsection if it is held by an irrevocable trust, *established by the Trustees*… (emphasis added).

Accordingly, when the Trustees drew down the Fifth Third Bank letter of credit they should have placed that amount in their irrevocable trust.  Had they done so, there would have been no possible claim against Arch Coal in this matter.[6]  This Court should therefore compel the Trustees to do now what they should have done in 2015.

## III.    The Amount by Which the Proceeds of the Letter of Credit Exceeds the Amount of Security Required for 2017 Must Be Used to Provide Benefits for the 1988 Signatory Operators' Retirees

The security taken by the Plan in December 2015 exceeds the security the Plan requires in 2017 for the beneficiaries in question.  The question presented in Defendant's Counterclaim is what should be done with the excess security.

---

[6]    Plaintiffs acknowledge that the proceeds of the letter of credit became Plan assets "and remain in the possession and control of the 1992 Plan."  *See* Exhibit 5, UMWA 1992 Benefit Plan's Responses to Defendant's First Set of Interrogatories, Answer to Interrogatory No. 2. However, the Plan considers security that has been called "part of the deferred premium account, there is no actual segregation or earmarking of assets."  *Id.*  Answer to Interrogatory No. 7.

### A. If Section 9712(d)(1)(B) of the Act Does Not Require Arch Coal to Provide Security, then Arch is Entitled to the Amount by which the Proceeds of the Letter of Credit Exceeds the 2017 Security Requirement

The Plan Document provides at Article XI(4)(F)(IV) that when the amount of security held by the Plan in its cash escrow account exceeds the required security, the excess may be used to pay benefits.   Indeed, if the Plan did not provide a mechanism for calibrating security requirements to the beneficiary population, there would come a time when 1988 signatory operators had no ongoing liability under Section 9711, but could not recover security posted at an earlier time.

Plaintiffs should have deposited the proceeds of the Fifth Third Bank letter of credit in its escrow account.   Arch Coal is entitled to recover any amount in the escrow account that exceeds the security required for 2017 in order to provide benefits for the 919 individuals for whom it is responsible under Section 9711(c) of the Act.   Accordingly, such excess must be provided to Arch for this purpose.

### B. If Arch Coal is Required to Provide Security to the 1992 Plan for 2017, the Plan Must Pay the Proceeds of the Fifth Third Bank Letter of Credit to Arch

The 1992 Plan drew down $8,608,392 from a letter of credit provided to secure benefits for the Coal Act beneficiaries of 1988 last signatory operators for whom Arch Coal is jointly and severally liable as a related person.   The 1992 Plan has not expended any of this security to provide benefits to the eligible retirees and dependents, because Arch Coal is required by statute to provide their benefits, and has done so.

For the reasons in Part II. B.2., *supra* at p. 22, if Arch provides security for 2017 the 1992 Plan will have excess security, and the Plan must provide the excess to Arch for use in providing benefits.

**CONCLUSION**

For the foregoing reasons, the Court should enter Summary Judgment in favor of the Defendant, and Order the Plaintiffs to establish an escrow account in the amount of $8,608,392, and pay to Defendant the amount by which the escrow account exceeds the 1992 Plan's security requirement for 2017.

Respectfully submitted,

_____/s/_____

John R. Woodrum, D.C. Bar # 933457
W. Gregory Mott, D.C. Bar # 438200
OGLETREE, DEAKINS, NASH, SMOAK,
   & STEWART
1909 K Street, N.W.
Suite 1000
Washington, D.C.  20006
Telephone:  (202) 887-0855
Email:  john.woodrum@ogletree.com
Email:  gregory.mott@ogletree.com

*Attorneys for Defendant Arch Coal, Inc.*

30891462.1

26