# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL H. HOLLAND, *et al.*, as Trustees of the United Mine Workers of America 1992 Benefit Plan, | **Case No. 1:17-cv-00300-CKK** |
| Plaintiffs/Counterclaim-Defendants, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| ARCH COAL, INC., | |
| Defendant/Counterclaim-Plaintiff. | |

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

UNDISPUTED FACTS ........................................................................................ 2

ARGUMENT ......................................................................................................... 4

    I.   RELATED PERSONS ARE JOINTLY AND SEVERALLY RESPONSIBLE
        FOR PROVIDING THE SECURITY MANDATED BY SECTION 9712(d)(1)(B) .. 4

        A.  Section 9712(d)(4) Makes Related Persons Jointly And Severally Liable For
            All Of Section 9712(d)(1)'s Requirements ............................................................ 7

            1. The phrase "amount required to be paid" ordinarily refers to money
               transfers and the provision of security ................................................................ 7

            2. Section 9712's structure confirms that the phrase "amount required to be
               paid" refers to premiums and security alike, since both are "financing
               obligations" ........................................................................................................ 9

        B.  Were Section 9712(d)(4) Ambiguous, The Coal Act's History And Purpose
            Would Require Resolving Any Ambiguity Against Arch's Interpretation ......... 10

    II.  ARCH IS NOT ENTITLED TO ANY BENEFIT FROM THE PROCEEDS OF
        THE PATRIOT LETTER OF CREDIT ................................................................ 13

    III. ARCH'S COUNTERCLAIM MAKES NO SENSE ............................................... 15

CONCLUSION..................................................................................................... 15

## TABLE OF AUTHORITIES

Page(s)

CASES

*A.T. Massey Coal Co. v. Massanari*,
    305 F.3d 226 (4th Cir. 2002) ................................................11

*Am. Council of the Blind v. Paulson*,
    525 F.3d 1256 (D.C. Cir. 2008) ...........................................12

*Barnhart v. Sigmon Coal Co.*,
    534 U.S. 438 (2002) ..............................................................8

*Bellaire Corp. v. Shalala*,
    995 F. Supp. 125 (D.D.C. 1997) ..........................................11

*Burlington N. & Santa Fe. Ry. v. White*,
    548 U.S. 53 (2006) .............................................................8, 9

*Davis v. Mich. Dep't of Transp.*,
    489 U.S. 803 (1989) .........................................................9, 10

*Eastern Enterprises v. Apfel*,
    524 U.S. 498 (1998) ..............................................................4

*Edmonson v. Lincoln Nat'l Life Ins. Co.*,
    725 F.3d 406 (3d Cir. 2013) ..................................................7

*Holland v. Williams Mountain Coal Co.*,
    256 F.3d 819 (D.C. Cir. 2001) .............................................11

*Holland v. Williams Mountain Coal Co.*,
    No. 96-1405, 2000 WL 284298 (D.D.C. Feb. 24, 2000) ........8

*In re Montgomery Ward, LLC*,
    292 B.R. 49 (Bankr. D. Del. 2003) ........................................7

*Kools v. Citibank, N.A.*,
    872 F. Supp. 67 (S.D.N.Y. 1995) ........................................14

*Navana Logistics Ltd. v. TW Logistics, LLC*,
    No. 15-CV-856, 2016 WL 796855 (S.D.N.Y. Feb. 23, 2016)...............14

*Penn Allegh Coal Co. v. Holland*,
    138 F.3d 860 (D.C. Cir. 1999) .............................................10

*Pittston Co. v. United States*,
   368 F.3d 385 (4th Cir. 1999) ................................................................14

*Russello v. United States*,
   464 U.S. 16 (1983) .................................................................................8

*Taniguchi v. Kan Pac. Saipan*,
   132 S. Ct. 1997 (2012) ..........................................................................7

**STATUTES**

26 U.S.C. § 9701 ...........................................................................................1

26 U.S.C. § 9701(c)(1) ..........................................................................4, 12

26 U.S.C. § 9701(c)(2) ..........................................................................4, 12

26 U.S.C. § 9701(c)(5) ...............................................................................5

26 U.S.C. § 9704(a) ...........................................................................5, 9, 12

26 U.S.C. § 9704(a)(1) ................................................................................9

26 U.S.C. § 9704(a)(2) ................................................................................9

26 U.S.C. § 9704(a)(3) ................................................................................9

26 U.S.C. § 9706(b)(1)(A) .........................................................................4

26 U.S.C. § 9711 .......................................................................................11

26 U.S.C. § 9711(a) ..............................................................................5, 12

26 U.S.C. § 9711(c)(1) ..........................................................................5, 12

26 U.S.C. § 9712(a)(2)(B) ........................................................................14

26 U.S.C. § 9712(a)(2)(C) ........................................................................14

26 U.S.C. § 9712(b) ..................................................................................11

26 U.S.C. § 9712(d)(1) .....................................................................9, 10, 12

26 U.S.C. § 9712(d)(1)(A) ...............................................................5, 10, 11

26 U.S.C. § 9712(d)(1)(B) ................................................................. *passim*

26 U.S.C. § 9712(d)(1)(C) ...............................................................5, 8, 10

26 U.S.C. § 9712(d)(4) ....................................................................................... *passim*

29 U.S.C. § 1001 ...............................................................................................14

29 U.S.C. § 1104(a)(1)(A) ................................................................................14

**OTHER AUTHORITIES**

138 Cong. Rec. 34,001 (1992) ..........................................................................12

Pub. Law 102–486 § 19142(a)(2) .................................................................4, 11

RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE (1981)..............................10

## <u>INTRODUCTION</u>

Congress crafted the Coal Industry Retiree Health Benefit Act ("Coal Act"), 26 U.S.C. § 9701 *et seq.*, to save select retired miners' healthcare benefits from imminent collapse.  To do so, Congress imposed a series of obligations on two groups of entities that Congress determined were most responsible for the crisis: the coal companies that promised to provide the benefits and their "related persons," *i.e.*, entities in the same controlled group.  These two groups of entities are jointly and severally liable for the obligations imposed by the Coal Act.

Defendant Arch Coal, Inc. is one of the "related persons" subject to the Coal Act.  Four of its former subsidiaries signed collectively-bargained agreements in which they promised to provide healthcare to retired miners.  Arch is jointly and severally liable for the Coal Act obligations of those four former subsidiaries.

At issue is only one of those obligations: to provide security to the United Mine Workers of America 1992 Benefit Plan ("1992 Plan") for the cost of providing one year's worth of benefits to Arch's former subsidiaries' retirees and their dependents.  *See* 26 U.S.C. § 9712(d)(1)(B). For almost a decade following enactment of the Coal Act, Arch provided that security.

Now, however, Arch takes the opposite legal position.  It now argues that its joint-and-several liability extends to all the Coal Act obligations *except for the security obligation*.  The text, structure, history, and purpose of the Coal Act all doom Arch's new argument.  A related person's joint-and-several liability to the 1992 Plan extends to *all of* the related signatory operator's obligations, including the security obligation.  *See* 26 U.S.C. § 9712(d)(4).  That means Arch must provide the mandatory security.

Arch argues in the alternative that even if it is obligated to post security, the obligation has been satisfied; it says that another company, Patriot Coal Corporation, provided security. But that security—a letter of credit—no longer exists; it was fully drawn in 2015.

Arch finally argues it should get a refund of a portion of the proceeds of Patriot's letter of credit. Arch was a stranger to Patriot's letter of credit, lacks standing to second-guess the act of drawing it, and lacks standing to seek a refund of the proceeds.

Arch's motion for summary judgment should be denied. The Court should grant summary judgment for Plaintiffs.

## UNDISPUTED FACTS

The material facts are not disputed. Plaintiffs, the Trustees of the 1992 Plan, already recounted the statutory and factual background of this civil action in their brief in support of their motion for summary judgment and supporting statement of material facts. *See* ECF No. 19-1 ("Trustees Br.") at 2–6; ECF No. 19-2 ("PSMF"). The Trustees will not repeat or belabor all those points here. Reading the parties' opposing submissions, however, it is clear that all agree as follows:

- Arch is not, and never has been, a 1988 last signatory operator ("1988 LSO") under the Coal Act. Plaintiffs' Response to Arch's Statement of Material Facts ("RSMF"), Response ¶ 4.

- Arch is, and at all relevant times has been, a "related person" under the Coal Act to four 1988 LSOs, which were its subsidiaries as of July 20, 1992 ("Arch Subsidiaries"). RSMF Response ¶¶ 1, 5; RSMF Add'l Facts ¶¶ 12–14.

- From 1996 through 2005, *Arch did the very thing it now claims it is not obligated to do*: it provided, as a "related person," the security required by Section 9712(d)(1)(B). RSMF

Response ¶ 6; *see* ECF No. 20-1 ("Arch Br.") at 2 (asserting that the 1992 Plan "held security for the beneficiaries in question that was fully compliant with the Coal Act from 1993 through December 2015").[1]

- Arch sold the Arch Subsidiaries to Magnum Coal Company in 2005, which provided the Section 9712(d)(1)(B) security for the Arch subsidiaries until Magnum was acquired by Patriot Coal Corporation in 2008.  RSMF Response ¶¶ 7–9; RSMF Add'l Facts ¶¶ 15–16.

- From 2008 through 2015, Patriot provided the Section 9712(d)(1)(B) security for the Arch Subsidiaries with a letter of credit.   RSMF Response ¶ 10; RSMF Add'l Facts ¶¶ 15–20, 27.

- Patriot's letter of credit entitled the 1992 Plan to draw in the event Patriot failed, ceased, or refused to provide the required healthcare benefits for the Coal Act retirees attributable to the Arch Subsidiaries ("Arch Retirees").  RSMF Add'l Facts ¶ 26.

- Patriot and its subsidiaries filed for bankruptcy on May 12, 2015.  RSMF Response ¶ 11.

- In October 2015, Patriot terminated retiree benefits through its individual employer plan ("IEP").  RSMF Response ¶ 12.

- The 1992 Plan drew on the Patriot letter of credit on December 10, 2015.  RSMF Add'l Facts ¶ 27.

- The 1992 Plan currently holds no security for the Arch Subsidiaries.  RSMF Add'l Facts ¶¶ 27–31.

- Arch refuses to provide the Section 9712(d)(1)(B) security to the 1992 Plan.  RSMF Add'l Facts ¶ 38.

---

[1]     While Arch asserts that it posted the security required by Section 9712(d)(1)(B) since 1993, Arch Br. 2, the 1992 Plan did not implement the security requirement until September 1995, RSMF Add'l Facts ¶ 8.  No security was posted before 1996.

3

## ARGUMENT

The Court should deny Defendant's motion and should grant summary judgment for Plaintiffs because there is no dispute of material fact and Plaintiffs are entitled to judgment as a matter of law.  Since the Coal Act became effective, Arch has been subject to it as a "related person" to four "1988 last signatory operators."   For almost a decade, Arch provided the Section 9712(d)(1)(B) security.  Indeed, in January 2016, Arch informed the 1992 Plan that it was "in the process of" posting security under Section 9712(d)(1)(B).  RSMF Add'l Facts ¶ 32.  But now Arch claims that "related persons" only have to pay premiums to the 1992 Plan and do not have to provide security.  The relevant provision of the Coal Act has not been amended and there has been no change in Arch's status—it is still a "related person."  Arch's legal argument is an about-face regarding the Section 9712(d)(1)(B) security, and it makes no sense in light of the Coal Act's text, structure, and purpose.

## I.   RELATED PERSONS ARE JOINTLY AND SEVERALLY RESPONSIBLE FOR PROVIDING THE SECURITY MANDATED BY SECTION 9712(d)(1)(B).

The Coal Act was a special solution to a specific problem:  the once-imminent collapse of collectively-bargained, multiemployer healthcare trusts for retired miners.  Through the Coal Act, Congress ensured that select retirees would receive the health benefits they were promised. *See Eastern Enterprises v. Apfel*, 524 U.S. 498, 511–13 (1998).  The entities that bear the brunt of the Coal Act's obligations are the ones Congress deemed "most responsible" for the retirees' healthcare needs.  Pub. Law 102–486 § 19142(a)(2).

These most responsible entities are the coal operators that actually signed certain collectively-bargained coal wage agreements ("signatory operators"), and the entities that were, as of July 20, 1992, members of the same controlled group as those operators ("related persons"). 26 U.S.C. § 9701(c)(1)–(2); *see id.* § 9706(b)(1)(A).

- IEPs must be maintained by each covered retiree's "last signatory operator," and "for as long as the last signatory operator (and any related person) remains in business." 26 U.S.C. § 9711(a).  "[E]ach related person of a last signatory operator … shall be jointly and severally liable with the last signatory operator for the provision of health care coverage" under an IEP.  *Id.* § 9711(c)(1).

- To the Combined Fund, a group of signatory operators, called "assigned operators," must provide annual premiums.  26 U.S.C. § 9704(a); *see id.* § 9701(c)(5).  "Any related person with respect to an assigned operator shall be jointly and severally liable for any premium required to be paid by such operator."  *Id.* § 9704(a).

- To the 1992 Plan, 1988 LSOs must remit "monthly per beneficiary premium[s]," 26 U.S.C. § 9712(d)(1)(A); security, in an acceptable form, and "in an amount equal to a portion of the projected future cost to the 1992 … Plan of providing benefits for eligible and potentially eligible beneficiaries," *id.* § 9712(d)(1)(B); and, if necessary, "an additional backstop premium," *id.* § 9712(d)(1)(C).  "[A]ny related person to any such operator[] shall be jointly and severally liable with such operator for any amount required to be paid by such operator."  *Id.* § 9712(d)(4).

Arch has always been obligated under the Coal Act only as a "related person."  Arch was not a signatory to the relevant coal wage agreements.  As of July 20, 1992, however, Arch owned signatory operators, including the four Arch Subsidiaries—all 1988 LSOs.  RSMF Response ¶¶ 1, 5; RSMF Add'l Facts ¶¶ 12–14.  So Arch is a "related person" to the Arch Subsidiaries.  RSMF Response ¶ 5; RSMF Add'l Facts ¶ 12.

As a related person, Arch provided the security required by Section 9712(d)(1)(B) to the 1992 Plan for nearly a decade—from 1996 until 2005, when it sold the Arch Subsidiaries.

RSMF Response ¶ 6; *see* Arch Br. 2.[2]   And consistent with that practice, *Arch alleges in its counterclaim that "related persons" to 1988 LSOs are jointly and severally responsible for providing the Section 9712(d)(1)(B) security*.   ECF No. 4 at 5 ¶ 5 ("Section 9712(d)(1)(B) requires a Responsible Operator *and/or its related persons* to post security to the 1992 Plan ....") (emphasis added).   After all, the joint-and-several liability of related persons is a necessary premise of Arch's counterclaim: if related persons aren't responsible for providing security, they aren't entitled to any refund of excess security, either.   *See id.* at 7; *see also* Arch Br. 25 (asserting that "Arch is entitled to recover any amount" of the proceeds of Patriot's letter of credit "that exceeds the security required for 2017 in order to provide benefits for the [Arch Retirees] for whom it is responsible under Section 9711(c) of the Act").

Sometime between March 2017 (when it filed its counterclaim) and now, however, Arch changed its mind.   To avoid complying with Section 9712(d)(1)(B) and posting the required security, Arch now contends that "related persons" bear joint-and-several liability only for premiums due to the 1992 Plan—the per beneficiary premium (Section 9712(d)(1)(A)) and the backstop premium (Section 9712(d)(1)(C)).   In Arch's view, the mandatory security obligation (Section 9712(d)(1)(B)) applies exclusively to 1988 LSOs, such that when they cease to exist so does the security obligation.   *See* Arch Br. 10–13.

---

[2]      Arch made its sale of the Arch Subsidiaries contingent upon the purchaser, Magnum, replacing the security Arch provided to the 1992 Plan with its own.   RSMF Response ¶ 8.   In 2008, when Patriot acquired Magnum, Patriot likewise arranged for a replacement security—the Patriot letter of credit.   RSMF Add'l Facts ¶¶ 16–17.   At no time between Patriot's May 12, 2015 bankruptcy filing and its October 26, 2015 termination of its IEP (or any time thereafter), however, did Arch arrange to replace Patriot's security. RSMF Add'l Facts ¶¶ 32–39.   Arch's theory in this case is that none of these entities actually had to pay security for the Arch Subsidiaries.

Arch had the better of the argument the first time.  As a matter of law, related persons like Arch are jointly and severally responsible for providing the security mandated by Section 9712(d)(1)(B).

### A.   Section 9712(d)(4) Makes Related Persons Jointly And Severally Liable For All Of Section 9712(d)(1)'s Requirements.

#### 1.   The phrase "amount required to be paid" ordinarily refers to money transfers and the provision of security.

The joint-and-several liability of "related persons" in connection with the 1992 Plan is set forth in Section 9712(d)(4): "A 1988 last signatory operator … and any related person to any such operator[] shall be jointly and severally liable with such operator for any amount required to be paid by such operator under this section."  26 U.S.C. § 9712(d)(4).  Arch's argument boils down to this: the phrase "any amount required to be paid by such operator" only refers to the obligation to pay premiums.  For, in Arch's view, security is "provided," not "paid."  Arch Br. 11–12.  Arch is wrong.

The phrase "amount required to be paid" is not defined in the Coal Act, so it takes its ordinary meaning.  *See Taniguchi v. Kan Pac. Saipan*, 132 S. Ct. 1997, 2002–03 (2012).  In its ordinary sense, the word "payment" connotes not just the transfer of money, but also the provision of security.  *See, e.g.*, *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 425 n.16 (3d Cir. 2013) ("a security" and "a mortgage" are "forms of payment"); *In re Montgomery Ward, LLC*, 292 B.R. 49, 54 (Bankr. D. Del. 2003) ("[A] letter of credit is a mode of payment.").

Providing security entails payment of money—*i.e.*, to a bank, a surety, or an escrow agent.  That's consistent with Section 9712(d)(4)'s use of the word.  Joint-and-several liability extends to "any amount required to be paid *by [the 1988 LSO]*."  26 U.S.C. § 9712(d)(4) (emphasis added).  Had Congress intended to limit related persons' liability to "any amount required to be paid *to the 1992 Plan*," *see* Arch Br. 11, presumably it would have written the statute that

way.  *See Russello v. United States*, 464 U.S. 16, 23 (1983).[3]  Section 9712(d)(4)'s focus on the

payor, and not the payee, reflects that Congress was trying to reach payments made not just to

the 1992 Plan, but also to a bank, surety, or escrow agent.

Interpreting the phrase "any amount required to be paid" as embracing only premiums

creates tension with adjacent statutory text.  Section 9712(d)(4) has two sentences.  The first

makes related persons "jointly and severally liable ... *for any amount required to be paid* … un-

der this section," whereas the second provides an option to limit joint-and-several "liability *for

premiums* under this section."  26 U.S.C. § 9712(d)(4) (emphases added).  In Arch's view, these

different phrases must be interpreted the same—*i.e.*, as "liability for premiums."  But Congress

normally intends differences in statutory text, especially within the same statutory subsection, to

be meaningful, not meaningless.  *See Burlington N. & Santa Fe. Ry. v. White*, 548 U.S. 53, 62–

63 (2006) ("[T]he question is whether Congress intended its different words to make a legal dif-

ference.  We normally presume that, where words differ as they differ here, Congress acts inten-

tionally and purposely in the disparate inclusion or exclusion.").

Congress chose its words carefully when drafting the Coal Act.  *See Barnhart v. Sigmon

Coal Co.*, 534 U.S. 438, 454 (2002).  *Sigmon* teaches that Congress's use of different language in

the Coal Act—in that case, "successor" and "successor-in-interest"—was intentional.  *See id.* at

452–54.  For to treat "successor" and "successor-in-interest" as synonyms would impermissibly

"ascribe th[e] difference [between them] to a simple mistake in draftsmanship."  *Id.* at 454; *see

Holland v. Williams Mountain Coal Co.*, No. 96-1405, 2000 WL 284298, at *2–3 (D.D.C.

---

[3]      Further, Section 9712(d)(1)(B)'s security is a conditional payment of money to the
1992 Plan; if the conditions to call the security are met, the 1992 Plan is paid the secured funds.
Arch concedes as much.  *See* Arch Br. 12.  In this way, the security is like the additional back-
stop premium, which only becomes due to the 1992 Plan if certain conditions are met.  *See*
26 U.S.C. § 9712(d)(1)(C) (backstop premium due only if transfers under the Surface Mine Rec-
lamation Act fall short of statutory requirements).

Feb. 24, 2000) (Kollar-Kotelly, J.) (Coal Act's "successor" and "successor-in-interest" have different meanings).  So, too, here: liability "for any amount required to be paid" must mean something different than "liability for premiums" in Section 9712(d)(4).  And the only possible difference is the security required by Section 9712(d)(1)(B); that's the only non-premium obligation imposed under Section 9712.  *See* 26 U.S.C. § 9712(d)(1).

Indeed, when Congress intends to refer to "premiums" in the Coal Act it uses the word "premiums."  Take Section 9704(a): the only amounts required to be paid under that provision are premiums to the Combined Fund.  *See* 26 U.S.C. § 9704(a)(1)–(3).  And because the signatory operator's obligation concerns only premiums, Congress made "[a]ny related person with respect to an assigned operator … jointly and severally liable for any *premium required to be paid* by such operator."  26 U.S.C. § 9704(a) (emphasis added).  The same Congress that wrote Section 9704(a) wrote Section 9712(d)(4), but used a different phrase: "any *amount required to be paid* by such operator."  26 U.S.C. § 9712(d)(4) (emphasis added).  That is strong evidence that Congress intended the two phrases to have different meanings.  *See Burlington N.*, 548 U.S. at 62–63.

> **2.**   **Section 9712's structure confirms that the phrase "amount required to be paid" refers to premiums and security alike, since both are "financing" obligations.**

Section 9712(d)(4) imposes no new obligations; it makes a class of entities (related persons) jointly and severally responsible for obligations imposed upon a different class of entities (1988 LSOs) in another provision, Section 9712(d)(1).  So the phrase "amount required to be paid" in Section 9712(d)(4) must be read in light of Section 9712(d)(1).  *See Davis v. Mich. Dep't of Transp.*, 489 U.S. 803, 809 (1989) ("It is a fundamental canon of statutory construction that words of a statute must be read in their context and with a view to their place in the overall statutory scheme.").

9

Section 9712(d)(1) imposes three obligations on 1988 LSOs—per beneficiary premiums, mandatory security, and backstop premiums.  26 U.S.C. § 9712(d)(1)(A)–(C).  All follow the same introductory language: "All 1988 last signatory operators shall be responsible for *financing* the benefits described in subsection (c) *by meeting the following requirements* in accordance with the contribution requirements established in the 1992 … Plan."  26 U.S.C. § 9712(d)(1) (emphases added).  Thus, the requirements that follow—including the security requirement—are "financing" requirements.  *See Davis*, 489 U.S. at 809.

The words "finance" and "pay" are synonyms.  *See* RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 532 (1981) (to "finance" is "to supply with means of payment; provide capital for; [or] obtain or furnish credit for," and is a synonym for "pay").  Like premiums, the security required by Section 9712(d)(1)(B) is a "financing" requirement.  As such, the required security is "an amount required to be paid" under Section 9712(d)(4), for which related persons, like Arch, are jointly and severally liable.

## B.  Were Section 9712(d)(4) Ambiguous, The Coal Act's History And Purpose Would Require Resolving Any Ambiguity Against Arch's Interpretation.

Section 9712(d)(4) is unambiguous: related persons are jointly and severally liable for all obligations imposed on 1988 LSOs under Section 9712(d)(1).  Arch's tortured reading of Section 9712(d)(4) doesn't create ambiguity, for all the reasons discussed.  But even if it did, Arch's argument would fail.  When provisions of the Coal Act are ambiguous, "it becomes necessary for a court to look to the intent of Congress as revealed in the history and purposes of the statutory scheme."  *Penn Allegh Coal Co. v. Holland*, 138 F.3d 860, 864 (D.C. Cir. 1999).  The Coal Act's history and purpose favor an interpretation that holds related persons jointly and severally liable for *all* of a 1988 LSOs obligations under Section 9712(d)(1).

The Coal Act replaced a health-benefit system that was entirely a matter of contract and that employers could (and did) disregard.  *See Holland v. Williams Mountain Coal Co.*, 256 F.3d 819, 821 (D.C. Cir. 2001).  Under the Coal Act's system, employers not only have statutory obligations to provide benefits; the Act also sets up a series of backstops and precautionary measures to maintain the system in case employers default on their obligations.  The 1992 Plan is the system's ultimate safety net.  It provides benefits to retirees whose former employers have failed in their obligation to provide healthcare benefits through IEPs.  26 U.S.C. § 9712(b); *Bellaire Corp. v. Shalala*, 995 F. Supp. 125, 130 (D.D.C. 1997); *see* 26 U.S.C. § 9711.

To fund benefits for active 1992 Plan beneficiaries, mandatory per beneficiary premiums are imposed on coal companies every month.  26 U.S.C. § 9712(d)(1)(A).  In recognition that month-to-month funding isn't enough to ensure long-term and future solvency, the Coal Act and the 1992 Plan also require coal companies that are actively providing benefits under an IEP to provide a limited guarantee that they will continue to provide benefits.  This limited guarantee takes the form of mandatory security, amounting to one year's worth of benefits for the actual and would-be beneficiaries of the 1992 Plan.  26 U.S.C. § 9712(d)(1)(B).  Whether by letter of credit, bond, or cash escrow, some security must always be in place.  *See id.*

Joint-and-several liability is another of the Coal Act's precautionary measures to protect retirees and their healthcare benefits.  Congress expected that coal companies might try to avoid their Coal Act obligations, as they had avoided their pre-Act contractual obligations.  *A.T. Massey Coal Co. v. Massanari*, 305 F.3d 226, 232 (4th Cir. 2002).  Joint-and-several liability of related persons "preclude[s] such avoidance."  *Id.*  And it is consistent with Congress's determination that signatory operators *and their related persons* as of July 20, 1992 were "most responsible" for the crisis that lead to the Coal Act.  Pub. Law 102–486 § 19142(a)(2); *see* 26 U.S.C.

11

§ 9701(c)(1)–(2); 138 Cong. Rec. 34,001 (1992) (Conf. Rep.) (as "the essence" of a compromise necessary to enact the Coal Act, Congress intended "to assign the cost of providing [Coal Act] benefits to ongoing businesses which have or had a [shared-ownership] relationship with the signatory employer," in recognition of "the financial interdependence of these related entities").

The joint-and-several-liability device appears throughout the Coal Act.  The Act imposes three groups of obligations on signatory operators—one concerns the Combined Fund (26 U.S.C. § 9704(a)), one concerns IEPs (*id.* § 9711(a)), and the other concerns the 1992 Plan (*id.* § 9712(d)(1)).  Related persons are jointly and severally liable *for all* of the signatory operator's obligations related to the Combined Fund, 26 U.S.C. § 9704(a), and *for all* of the signatory operator's obligations related to IEPs, *id.* § 9711(c)(1).  In light of the Coal Act's history and purpose, and Congress's expansive use of joint-and-several liability in the Coal Act, it would be anomalous to conclude that Congress intended related persons to be jointly and severally liable *for only some* of the signatory operator's obligations with respect to the 1992 Plan.  *See also Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1260 n.2 (D.C. Cir. 2008) (the *in pari materia* canon requires similar statutes to be interpreted similarly).

* * * * *

For all these reasons, Arch's new theory that Section 9712(d)(4) makes related persons jointly and severally responsible only for premiums, and not security, lacks merit.  Arch's contention that the 1992 Plan's Agreement and Declaration of Trust ("Trust Agreement") "expand[s] related person liability," Arch Br. 15, likewise fails.  The Trust Agreement acknowledges related persons' joint-and-several responsibility to provide the security required by Section 9712(d)(1)(B).  So does Section 9712(d)(4).

## II.   ARCH IS NOT ENTITLED TO ANY BENEFIT FROM THE PROCEEDS OF THE PATRIOT LETTER OF CREDIT.

The 1992 Plan currently has no security for "the projected future cost to the 1992 … Plan of providing health benefits for eligible and potentially eligible beneficiaries attributable to the" Arch Subsidiaries, as mandated by the Coal Act.  26 U.S.C. § 9712(d)(1)(B).  The 1992 Plan had the Patriot letter of credit until it drew on it in December 2015.  The Trustees had every right— and indeed, a fiduciary obligation—to authorize that draw, given Patriot's termination of its IEP in October 2015.  *See* Trustees Br. 10–11.  The proceeds are now assets of the 1992 Plan.  RSMF Response ¶ 23; RSMF Add'l Facts ¶¶ 29–31.

As recounted in greater detail in Plaintiffs' brief in support of their motion for summary judgment, Arch is a stranger to the letter of credit Patriot provided to comply with Section 9712(d)(1)(B).  Arch was never a party to the Patriot letter of credit; never communicated with Fifth Third Bank about the Patriot letter of credit; didn't pay any fees to Fifth Third Bank in connection with the letter of credit; and didn't post any collateral in connection with the letter of credit.  Trustees Br. 9–10; RSMF Add'l Facts ¶¶ 21–24.

Yet Arch insists that, one way or another, *Arch* is entitled to the proceeds of Patriot's letter of credit.  Specifically, Arch asserts that the 1992 Plan must either (a) treat the proceeds as a cash escrow, thereby satisfying Arch's obligation under Section 9712(d)(1)(B); or (b) use the proceeds to fund the benefits to which the Arch Retirees are entitled under Section 9711, either by providing the benefits directly or by transferring the proceeds to Arch for Arch's use in providing benefits under its IEP.  Arch Br. 19–24.

That's absurd.  Arch is not entitled to an $8.6 million windfall.

Contrary to Arch's foundational premise, *see* Arch Br. 20, nothing in the Coal Act restricts the use of proceeds from a called security to specific 1992 Plan beneficiaries.  No doubt,

the *amount* of the required security is measured by the number of actual and potential beneficiaries attributable to the relevant 1988 LSO, but that's as far as it goes. 26 U.S.C. § 9712(d)(1)(B). Rather, Congress restricted how plan assets are to be spent, including the proceeds from a called security, by designating the 1992 Plan "an employee welfare benefit plan" and "a multiemployer plan," as those terms are used in the Employment Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* 26 U.S.C. § 9712(a)(2)(B)–(C). That makes the Trustees fiduciaries for *all* of the 1992 Plan's actual and potential beneficiaries. *See Pittston Co. v. United States*, 368 F.3d 385, 398 (4th Cir. 1999). Thus, everything the Trustees do must be "solely in the interest of the participants and beneficiaries" of the 1992 Plan and "for the exclusive purpose[] ... of providing benefits to participants … and … defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). Those fiduciary obligations alone dictate how the proceeds from the Patriot letter of credit must be spent, just as they govern the expenditure of any other plan assets.

Arch is really just trying to challenge the 1992 Plan's draw on the Patriot letter of credit. *See* Arch Br. 21. As a stranger to Patriot's letter of credit, however, Arch has no standing to assert that challenge. *See* Trustees Br. 9–10; *Kools v. Citibank, N.A.*, 872 F. Supp. 67, 70–72 (S.D.N.Y. 1995) (applicant's undisclosed principal has no standing to sue on letter of credit); *Navana Logistics Ltd. v. TW Logistics, LLC*, No. 15-CV-856, 2016 WL 796855, at *13–14 (S.D.N.Y. Feb. 23, 2016) (stranger to letter of credit can "not plausibly allege[] that it was injured" by bank's failure to honor beneficiary's draw, even if stranger may be liable to beneficiary for amounts withheld). And it is clear the Trustees had the right to call the security under the plain terms of the Patriot letter of credit. *See* Trustees Br. 10–11. By its terms, the Patriot letter of credit entitled the 1992 Plan to draw *either* (a) if Patriot "fail[ed], refus[ed], or ce[ased] to provide benefits under 26 U.S.C. section 9711"—that is, benefits under an IEP; *or* (b) if the rele-

14

vant beneficiaries were "enroll[ed]" in the 1992 Plan.  RSMF Add'l Facts ¶ 26; *see* RSMF Add'l Facts ¶ 25.  Here, Patriot ceased providing benefits under its IEP, and that was cause enough for the 1992 Plan to draw.  It doesn't matter that the Arch Retirees never were enrolled in the 1992 Plan because that wasn't the trigger for the 1992 Plan to draw on the letter of credit.

The bottom line is that Patriot's letter of credit is gone, and the 1992 Plan does not have the security required by Section 9712(d)(1)(B).  As a related person to the Arch Subsidiaries, Arch is jointly and severally liable for providing that security.  *See supra*, Part I.  The Trustees are entitled to summary judgment on their claim because Arch must—but refuses to—provide the security.

## III.     ARCH'S COUNTERCLAIM MAKES NO SENSE.

Arch concludes by insisting that it prevails on its counterclaim—and receives a windfall—whether or not it is jointly and severally liable for the Section 9712(d)(1)(B) security.  If it is, Arch asserts without elaboration that it is entitled to the full proceeds from Patriot's letter of credit.  Arch Br. 25.  If it is not, Arch contends it is nevertheless entitled to whatever portion of those proceeds exceeds Arch's security obligation for 2017.  *Id.*

Arch offers no authority for either proposition.  And there is none.  The money received from Patriot's letter of credit is not Arch's security.  *See* Trustees Br. 11–13.  And, as a stranger to Patriot's letter of credit, Arch has no standing to seek a "refund" or "return" of the proceeds even if, as Arch erroneously contends, the 1992 Plan took the money improperly.  *See id.* at 14.

<u>CONCLUSION</u>

Plaintiffs are entitled to summary judgment on all claims.

Respectfully submitted,


Dated: September 20, 2017                    s/ John R. Mooney_____
                                             John R. Mooney (DC Bar No. 375886)

Of Counsel:
**MORGAN, LEWIS & BOCKIUS LLP**
John C. Goodchild, III*
1701 Market Street
Philadelphia, PA 19103
T: (215) 963-5000
F: (215) 963-5001
john.goodchild@morganlewis.com

Bryan Killian (DC Bar No. 426195)
Stephanie Schuster (DC Bar No. 1011924)
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: (202) 739-3000
F: (202) 739-3001
bryan.killian@morganlewis.com
stephanie.schuster@morganlewis.com

*Motion for admission
 *pro hac vice* to be filed

Paul A. Green (DC Bar No. 383588)
Olga M. Thall (DC Bar No. 1016248)
**MOONEY, GREEN, SAINDON, MURPHY &
WELCH P.C.**
1920 L Street, NW, Suite 400
Washington, DC 20036
T: (202) 783-0010
F: (202) 783-6088
jmooney@mooneygreen.com
pgreen@mooneygreen.com
omthall@mooneygreen.com

Stanley F. Lechner (DC Bar No. 370986)
Charles P. Groppe (DC Bar No. 464035)
**MORGAN, LEWIS & BOCKIUS LLP**
1111 Pennsylvania Avenue, NW
Washington, DC 20004
T: (202) 739-3000
F: (202) 739-3001
stanley.lechner@morganlewis.com
charles.groppe.@morganlewis.com

Glenda S. Finch (DC Bar No. 418206)
Larry D. Newsome (DC Bar No. 254763)
Barbara E. Locklin (DC Bar No. 420503)
**UMWA HEALTH & RETIREMENT FUNDS
OFFICE OF THE GENERAL COUNSEL**
2121 K Street, NW, Suite 350
Washington, DC 20037
T: (202) 521-2238
gfinch@umwafunds.org
lnewsome@umwafunds.org
blocklin@umwafunds.org

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on September 20, 2017, a true and correct copy of the foregoing was

served via CM/ECF upon the following:

John R. Woodrum
OGLETREE, DEAKINS, NASH, SMOAK & STUART PC
1909 K Street, NW
Suite 1000
Washington, DC 20006
T: (202) 887-0855
john.woodrum@ogletreedeakins.com

s/ John R. Mooney
John R. Mooney

17