THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL H. HOLLAND, et al. as Trustees
of the UNITED MINE WORKERS OF
AMERICA 1992 BENEFIT PLAN,

      Plaintiffs/Counterclaim-Defendants,

            v.

ARCH COAL, INC.

      Defendant/Counterclaim-Plaintiff.

Civil Action No. 17-00300 (CKK)

**DEFENDANT ARCH COAL, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

John R. Woodrum
D.C. Bar # 933457
OGLETREE, DEAKINS, NASH, SMOAK,
& STEWART
1909 K Street, N.W., Suite 1000
Washington, D.C.  20006
Telephone:  (202) 887-0855
Email:  john.woodrum@ogletree.com

W. Gregory Mott
D.C. Bar # 438200
OGLETREE, DEAKINS, NASH, SMOAK,
& STEWART
1909 K Street, N.W., Suite 1000
Washington, D.C.  20006
Telephone:  (202) 887-0855
Email:  gregory.mott@ogletree.com

*Attorneys for Defendant/Counterclaim-Plaintiff*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

ARGUMENT .....................................................................................................................3

    A.  The 1992 Plan Invokes Related Person Liability When It Suits
        Its Purpose, and Ignores It When It Does Not. ...................................................3

    B.  The Plan Conflates the Purpose of Security With Who Provides It. ...................5

    C.  Plaintiffs' Reliance on the Form in which Security is Provided
        Cannot Legitimize the Plan's Demand that the Arch Related
        Person Group Provide Double Security. ..............................................................6

    D.  Arch Coal Does Not Contest the Plan's Legal Standing to
        Convert the Letter of Credit to Cash Security. .................................................10

    E.  Section 9712(d)(1)(B) of the Coal Act Does Not Impose Joint
        and Several Liability on a Related Person to Provide Security
        to the 1992 Plan. ...............................................................................................10

    F.  Plaintiffs' Reliance on Other Security Provisions in the
        Coal Act is Not on Point. ..................................................................................11

    G.  The Plan Misapprehends the Nature of Arch Coal's Counterclaim. .................13

# TABLE OF AUTHORITIES

## CASES

*Burlington N. & Santa Fe Ry. Co. v. White*,
    548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) ......................................................... 11

*Carbon Fuel Co. v. USX Corp.*,
    100 F.3d 1124 (4th Cir. 1996) ............................................................................................ 6, 8

*Graves v. Graves*,
    51 A.3d 521 (D.C. 2012) ......................................................................................................... 9

*Osin v. Johnson*,
    243 F.2d 653 (D.C. Cir. 1957) ................................................................................................ 9

## STATUTES

26 U.S.C. § 9711 ............................................................................................................... 13, 14

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL H. HOLLAND, et al. as Trustees
of the UNITED MINE WORKERS OF
AMERICA 1992 BENEFIT PLAN,

      Plaintiffs/Counterclaim Defendants,

          v.

ARCH COAL, INC.,

      Defendant/Counterclaim-Plaintiff.

Civil Action No. 1:17-cv-00300-CKK

**DEFENDANT ARCH COAL, INC.'S OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Defendant Arch Coal, Inc. ("Arch Coal" or "Arch"), through undersigned counsel, submits the following Memorandum of Points and Authorities in Opposition to Plaintiffs' Motion for Summary Judgment.

**INTRODUCTION**

This is a case of first impression. In the 25 years since the Coal Industry Retiree Health Benefit Act ("Coal Act" or "Act") was enacted, the UMWA 1992 Benefit Plan ("1992 Plan" or "Plan") has never drawn down security provided pursuant to Section 9712(d)(1)(B) of the Act and then filed suit demanding that a Coal Act "related person" post new security where the related person seamlessly continued in effect its 1988 last signatory operator's "individual employer plan" for Coal Act retirees.[1]

In this case the Trustees of the UMWA 1992 Benefit Plan aver that, "[a]t issue is the statutory obligation, imposed jointly and severally on all the companies in the same corporate controlled group, to provide security to the 1992 Plan for the cost of providing one year's worth

---

[1] *See* Plaintiffs' Answer to Defendant's Interrogatory No. 8: "No lawsuits for replacement security have been filed." ECF 19-14.

of benefits to that group's retirees and their dependents."  Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment (hereafter "Plaintiffs' S.J. Br.") at 1, ECF 19-1.  It is undisputed that at all times since the inception of the Coal Act the 1992 Plan has been in possession of an amount that meets or exceeds the annual security requirement of Section 9712(d)(1) for the 1988 last signatory operators at issue in this case.

Plaintiffs' sole claim is that Defendant Arch Coal must nevertheless provide new security, because Arch Coal is a related person to its now-defunct 1988 last signatory operators (the "Arch Related Person Group"), and the security vanished in December 2015 when the Plan converted an $8,608,392 letter of credit into cash.  Accepting as true that Arch Coal is jointly and severally liable for its signatory subsidiaries' security obligation (a claim Arch disputes in its summary judgment motion), Plaintiffs never explain why the Act requires Arch Coal to provide new security for the Arch Related Person Group that has already been posted.  The original security was never terminated or withdrawn, and the Plan does not claim that the Arch Related Person Group was ever in default.  Moreover, it is undisputed that the Arch Related Person Group has always provided healthcare benefits to the Coal Act retirees for whom the $8,608,392 in security was provided, and the 1992 Plan does not claim that it has used any of the letter of credit proceeds to provide benefits for the Arch Coal retirees.  In short, Plaintiffs never explain how joint and several liability supports their claim that an obligation can be imposed on one member of the related person group where the related person group has already satisfied that obligation.

Plaintiffs state repeatedly that the letter of credit is gone, but acknowledged in discovery that the proceeds have not vanished.  Rather, the Plan retains the money obtained from its unilateral draw down, but seemingly takes the odd position that, whereas the purpose of the $8,608,392 *letter of credit* is to secure the cost of providing one year's worth of benefits to the

Arch Related Person Group's retirees and their dependents, the purpose of the $8,608,392 in *proceeds* is not.  The elephant in the room is, "what happened to the $8,608,392?"  The Plaintiffs assert this amount is not "security", but carefully avoid saying what they propose to do with it.[2] The Plan claims that, once the letter of credit is converted to cash it is just a Plan asset. Plaintiffs' Statement of Materials Facts Not in Dispute, ¶ 42, ECF 19-2.  But we know this cannot be the case because, as Arch Coal demonstrated in its summary judgment brief, the proceeds of the letter of credit can only be used to provide benefits for Arch's Coal Act retirees. *See* Memorandum of Points and Authorities in Support of Defendant Arch Coal, Inc.'s Motion for Summary Judgment, p. 20 (hereafter "Defendant's S.J. Br."), ECF 20-1.  If the $8,608,392 isn't security, then it is just stranded cash without a use, trapped in a fiduciary's no-man's land.

## ARGUMENT

### A.    The 1992 Plan Invokes Related Person Liability When It Suits Its Purpose, and Ignores It When It Does Not.

The Plan's claim that Arch Coal must post $8,382,720 in security for 2017 is premised on its assertion that related persons are responsible for every obligation Section 9712(d)(1) imposes on a 1988 last signatory operator.[3]  In this regard, Article XI(10) of the Plan Document specifies:

> (10)  Any person that is a Related Person with respect to a Last Signatory Operator or 1988 Last Signatory Operator **shall be treated as such Operator** and shall be jointly and severally liable with such Operator for any obligation imposed under this Article.

ECF 19-5 at 13.  (emphasis added).

---

[2]  In Interrogatories directed to Plaintiffs, Arch asked:  "If the Defendant posts Security in the amount demanded in the Complaint, what would the Plan do with the Security…which the Plan currently holds?  Plaintiffs' non-answer was:  "Plaintiffs object to this interrogatory on the grounds that it asks a hypothetical question calling for speculation on a matter which is both irrelevant to the claims and defenses of the instant case and not proportional to the needs of this case."  Answer to Interrogatory No. 4, ECF 19-14.

[3]  Defendant argues in its opening brief in support of its Motion for Summary Judgment that providing security is not a contribution to the 1992 Plan, and therefore is not a responsibility Section 9712(d)(4) imposes on related persons.  *See,* ECF 20-1 at 8-18.

It cannot be plainer that the Plan Document defines Arch Coal to be the same as its former subsidiaries who are 1988 last signatory operators.  The Arch Related Person Group provided security that was fully compliant with the Act.  The fact the Plan unilaterally drew down the security does not change the fact that it was provided, and was never terminated or withdrawn by the Arch Related Person Group.  Moreover, the further fact that the Arch Related Person Group has never terminated benefits for their Coal Act retirees and dependents, and that the 1992 Plan has never paid any amount for or on behalf of those beneficiaries, means the Plan still retains an amount that is more than sufficient to provide one year of benefits to the beneficiaries in question.  Plaintiffs just don't want to call this amount "security".

Boxed in by its assertion that Arch Coal and its 1988 last signatory operators are considered the same for purposes of providing security, and the fact security was posted, the Plan is forced to jettison its reliance on controlled group liability.  Now it proposes to segregate Arch from the bankrupt 1988 last signatory operators, arguing that the Plan drew down *their* security, while insisting Arch Coal has a separate obligation to post security for these same retirees now that Arch Coal is providing their benefits.  *See* Plaintiffs' S.J. Br. at 5, ECF 19-1 (Noting that "Arch began providing benefits to [the retirees] under its own IEP", but Arch Coal "has not posted the mandatory security required by Section 9712(d)(1)(B).")

The Plan apparently takes the position that it may use related person liability as a sword (to compel a related person to post security) but a related person cannot use it as a shield (compliance by the Arch Related Person Group is compliance by each member of the Group). The statute provides no support for this bifurcation of related person liability (nor does the Plan Document itself), and the Plan has provided no support for such a tortured reading of the Act's security requirement.

4

**B.      The Plan Conflates the Purpose of Security With Who Provides It.**

As we (and the Plan) have noted repeatedly, Congress imposed a security requirement in Section 9712(d)(1)(B) to provide the Plan with a cushion in the event the Plan was required to enroll beneficiaries because their 1988 last signatory operator and its related persons failed to provide benefits.  Although Section 9712(d)(1) states that the security obligation falls on the 1988 last signatory operator, it is immaterial to the Plan who arranges for the security as long as the Plan can foreclose on it if necessary.  Plaintiffs' S.J. Br. at 3-4, ECF 19-1 ("It is up to whoever posts the security to choose among those forms, to weigh their costs and benefits, so long as the posted security meets the 1992 Plan's requirements.")

Plaintiffs are fixated on the fact that the letter of credit the Plan drew down in December 2015 was arranged by Patriot Coal Corporation.  This is a red herring, and it distracts from a clear analysis of how the Coal Act applies in this case.  Prior to December 31, 2005, when Arch Coal sold its 1988 last signatory operators to Magnum Coal, Arch Coal arranged for the provision of security compliant with Section 9712(d)(1).  Statement of Material Facts as to Which Defendant Arch Coal, Inc. Contends There is No Genuine Issue (hereafter "Defendant's Statement of Facts") ¶ 6, ECF 20-2.

When Arch sold its 1988 last signatory operators, it took advantage of the flexibility provided by Section 9711(g)(2), which permits a post-enactment seller to convey its Coal Act obligations to a purchaser.  Thus, the Purchase and Sale Agreement provided, among other things, that Magnum would assume responsibility for the signatory companies' security obligation.  Defendant's Statement of Facts ¶ 8, ECF 20-2.  After Patriot acquired Magnum in July 2008, Patriot arranged for the provision of security to the Plan.  Defendant's Statement of Facts ¶¶ 9-10, ECF 20-2.  Although Arch Coal was relieved of the obligation to compensate a third party surety for the cost attendant to providing security to the Plan, Section 9711(g)(2)

5

makes clear that "the last signatory operator transferring such assignment (and any related person) shall remain the guarantor of the benefits provided to the eligible beneficiary under this chapter." *See generally*, *Carbon Fuel Co. v. USX Corp.*, 100 F.3d 1124, 1129 (4th Cir. 1996) (The Act "allows post-Act contracts to reallocate assignments under the Act, although it requires that ultimate financial responsibility not be reallocated.")

The 1992 Plan could not have brought an action against Patriot had it failed to provide security because Patriot was not related to Arch Coal's 1988 last signatory operators on July 20, 1992, the snapshot date Section 9701(c)(2)(B) establishes for fixing related person status. Thus, Patriot did not arrange with Fifth Third Bank to provide a letter of credit for the Arch Coal 1988 last signatory operators because *Patriot* had a statutory obligation to do so; Patriot arranged for security because Arch Coal required Magnum (which Patriot subsequently acquired) to assume this Coal Act obligation as a condition of the sale.

This distinction is important because it makes clear that, in securing the letter of credit, Patriot was fulfilling the contractual obligation Magnum owed to Arch to secure the Arch Related Person Group's Coal Act obligations. For purposes of analyzing the security issue presented in this case it is immaterial *who* posted the security, or who compensated Fifth Third Bank for the letter of credit the Bank provided to the Plan. The 1992 Plan had compliant security, the purpose of which was to secure health benefits for the Arch Related Person Group's Coal Act retirees and dependents.

### C.    Plaintiffs' Reliance on the Form in which Security is Provided Cannot Legitimize the Plan's Demand that the Arch Related Person Group Provide Double Security.

The reason the Plan proffers for demanding that Arch Coal (*i.e.*, the Arch Related Person Group) now provide another $8,382,720 in security is because "the proceeds the 1992 Plan collected by drawing upon Patriot's letter of credit have not been transferred to any financial

institution to hold under a conforming escrow agreement".  Plaintiffs' S.J. Br. 12, ECF 19-1.
This exalts form over substance.  Moreover, it is significant that the Plaintiffs do not say that
Plan officials don't have the ability to place the proceeds into an earmarked account or a cash
escrow; it is just that they haven't and they won't.  Plaintiffs' mantra that "the letter of credit is
gone" is a specious claim that deflects the real point, which is that the letter of credit may be
gone but the security it provided is not.

  As Plaintiffs note, "the Plan allows cash escrows to satisfy an employer's mandatory
security obligations, but the 1992 Plan requires that cash escrows be set up pursuant to a specific
trust agreement, containing specific terms, including that the escrow be held by a qualified third
party financial institution."  Plaintiffs' S.J. Br. 12, ECF 19-1.  The gist of Plaintiffs' argument is
that the Plan doesn't have a rule saying the proceeds from a drawn down letter of credit (or bond)
constitutes security available to the Plan in the event a related person group fails to provide
benefits pursuant to their Section 9711 individual employer plan.  Perhaps that is because this
particular situation has not occurred previously.  In any event, the solution is obvious.  If the Plan
needs a rule, then the Trustees must develop a rule that accommodates this situation.  It need be
no more complex than:  "Cash proceeds from a letter of credit or bond provided by or on behalf
of a 1988 last signatory operator will be placed in a restricted account, to be used to provide
healthcare benefits for the Coal Act-eligible beneficiaries for whom the letter of credit or bond
was provided."

  In fact, the Plan already maintains a cash escrow arrangement with a third party financial
institution which can be utilized to hold the proceeds from the Fifth Third Bank letter of credit.
*See* Plan Document at Article XI(4)(F)(I) ("An amount held in escrow meets the requirements of
this subsection if it is held by an irrevocable trust, established by the Trustees…".)  ECF 19-5.
The 1992 Benefit Plan has maintained a Master Escrow Trust since 1995.  *See* September 25,

1995 Memo to operators regarding Implementation of Security Provisions for UMWA Benefit Plan, appended as Exhibit B to Declaration of John R. Mooney, offered in support of Plaintiffs' S.J. Br. , ECF 19-6.  Those Instructions provide at paragraph 5. CASH ESCROW:

> (a.)   cash escrow shall be acceptable security against the event that beneficiaries attributable to the Operator may be enrolled in the 1992 Plan… The 1992 Plan has established a master trust to be held by a bank trustee, in which Operators may elect to participate, as set forth in the trust agreement and attached Contribution Agreement at Exhibit 4.

ECF 19-6, at p. 7.

The Plan established its Master Escrow Trust with Bankers Trust Company.  *See* Trust Agreement for the 1992 Benefit Plan Retiree Health Benefits Reserve, ECF 19-6, at pages 26-40. It states that "the Funding Employers' contributions to this Trust, as and when received by the Bank, will constitute a Trust Fund to be held as security for each Funding Employer's continued provision of benefits to its retirees, for the benefit of the 1992 Plan."  *Id.* at 26.   "Funding Employer" is defined to mean "a 1988 last signatory operator which executes a Contribution Agreement *and its related persons* as described in Code Section 9701(c)(2)". *Id* at ECF 19-6, p. 27, Definition 2.5.  (emphasis added)

A review of the Master Trust demonstrates that, for all practical purposes, it functions in the same way as a letter of credit or a bond.  Furthermore, if a technical amendment to the Master Trust is necessary or appropriate to accommodate the unique circumstances here, the Plan has full authority to make such modifications unilaterally.  *See* Section 15.1 Amendment or Termination of Trust ("The Trust Agreement may be amended or terminated by the 1992 Plan at any time, in whole or in part, in writing…").

Even assuming the Plan resists escrowing the letter of credit proceeds, established equitable and trust principles support the Court imposing a constructive trust on the proceeds of

the letter of credit in favor of the Arch Coal retirees for whom the original security was provided. A constructive trust is a purely equitable and flexible remedy.  It arises "[w]here a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it."  *Restatement (First) of Restitution* § 160 (1937).  *Accord 4A Powell on Real Property p.* 594 at 48-3 and 48-4 (1979). The D.C. Circuit and the D.C. Court of Appeals have long recognized that a constructive trust can be imposed "wherever one unfairly holds title or a property interest and where the holder would be unjustly enriched if permitted to retain such interest."  *Osin v. Johnson*, 243 F.2d 653, 656 (D.C. Cir. 1957).  *See also Graves v. Graves*, 51 A.3d 521, 524 n.6 (D.C. 2012).

By creating a constructive trust for the easily identifiable proceeds, the Court equitably ensures that these funds will be preserved for the exclusive benefit of the Arch Coal retirees.  They will be earmarked and readily available to defray their medical expenses should the 1992 Plan have to finance their health benefits in the future.  While the Plan reflexively rationalizes its current inequitable approach by seeking refuge in the law of commercial paper, Plaintiffs' S.J. Br. at 9, it is axiomatic that the constructive trust doctrine pits principles of property against equity.  Here, vis-à-vis the Arch Coal retirees who are  "potential" 1992 Plan beneficiaries, the equitable result is for 1992 Plan Trustees to take on the court-ordered role of "constructive trustees" who hold over $8 million in constructive trust for the benefit of nearly 1000 Arch Coal retirees and dependents.

D.      **Arch Coal Does Not Contest the Plan's Legal Standing to Convert the Letter of Credit to Cash Security.**

Plaintiffs mistakenly assert that a premise of Arch Coal's defense and counterclaim is that the 1992 Plan prematurely drew down on Patriot's letter of credit.  Plaintiffs' S.J. Br. at 9, ECF 19-1.  This is incorrect; Arch Coal does not challenge the letter of credit drawdown. Rather, for the reasons developed in Arch's brief in support of its Motion for Summary Judgment, and in this Opposition brief, Arch Coal's position is that converting the letter of credit to cash does not affect its character as security within the meaning of Section 9712(d)(1)(B) of the Coal Act.  While it is true that the letter of credit is gone, the security provided by that instrument is not.  The proceeds from the letter of credit provide the Plan no less security than the letter of credit itself.

E.      **Section 9712(d)(1)(B) of the Coal Act Does Not Impose Joint and Several Liability on a Related Person to Provide Security to the 1992 Plan.**

Defendant's opening brief in support of Summary Judgment presented a pure statutory construction argument that the 1992 Plan's claim against Arch Coal must be rejected because Section 9712(d)(4) does not make a related person responsible for a 1988 last signatory operator's security obligation.  ECF 20-1 at 8-18.  The 1992 Plan did not address that argument in its brief in support of summary judgment, because Plaintiffs assumed (erroneously) that Arch Coal does not contest its statutory responsibility for providing security.[4]  It is true that, prior to selling its signatory subsidiaries to Magnum at the end of 2005, Arch Coal took responsibility for the provision of security to the Plan on behalf of its 1988 last signatory operators.  However, the fact that Arch Coal provided the security does not establish that it had a statutory obligation to do so.  There are many practical and financial reasons why a parent company would arrange for a

---

[4]   The 1992 Plan will have a full opportunity to address Arch Coal's statutory construction analysis in its Opposition to Defendant's brief in support of Summary Judgment.

surety to provide bonds or letters of credit required of its operating subsidiaries, especially in the coal industry.  Defendant's Statement of Facts ¶ 7, ECF 20-2.

### F.   Plaintiffs' Reliance on Other Security Provisions in the Coal Act is Not on Point.

Plaintiffs cite *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006), for the proposition that different security provisions inserted into the Coal Act by the 2006 Amendments prove that Arch Coal must provide the security that the 92nd Congress codified in Section 9712(d)(1) in 1992.  Plaintiffs' S.J. Br. at 12-13.  They rely on the statutory construction axiom that where words differ the court presumes Congress acted purposefully in the disparate inclusion or exclusion.  The thrust of Plaintiffs' argument, and how it relates to the issue before the Court, is not clear.

Moreover, Arch Coal does not argue in this case that the security obligation for 1988 last signatory operators in Section 9712(d)(1) is not mandatory.  Rather, Defendant's position is that the required security was provided, and the fact the Plan now holds $8,608,392 in cash instead of an $8,608,392 letter of credit does not leave the Plan without security.  In view of the unique features of Section 9711(c)(2), which was added 14 years after enactment, it is strained at best to suggest that it offers any guidance or insight into resolving the question presented here.

Second, Plaintiffs' reliance on Section 9711(c) is totally misplaced.  As enacted in 1992, this section provided only that related persons were jointly and severally liable for the provision of health care benefits for a last signatory operator's Coal Act retirees and dependents.  There was no mention of joint and several liability for those operators' *security* requirement.  Indeed, Section 9711(c)(1) of the current version of the Act retains this same requirement.

In the 2006 Amendments, Congress provided for an optional security which, if provided by a last signatory operator described in Section 9704(j)(2) or a related person to such operator, then the common parent of the controlled group would be exclusively responsible for the

provision of retiree health benefits imposed under Section 9711.  In other words, the parent corporation could assume exclusive responsibility for the benefits, and liability for every other member of the controlled group – – including the last signatory operators – – would be extinguished.  While it is not immediately obvious, the purpose of this provision was to facilitate the purchase and sale of coal companies with Coal Act liability.  For example, prior to this option being available, a third party interested in acquiring a company – – even a company not in the mining business – – would be reluctant to pay market value when that company would retain secondary liability as a related person to controlled group members who had had large Coal Act obligations.

By exercising this new option, the parent could now sell subsidiaries free and clear of their Coal Act related person liability, and a purchaser could acquire those companies without concern that someday their value might be greatly diminished because they had to assume responsibility for numerous Coal Act retirees should their former controlled group members go bankrupt.[5]  Plaintiffs' reference to the security language in Section 9712(d)(4) provides no additional support for their argument, because that language merely refers to Section 9711(c)(2) which is discussed above.

It is also significant that the Section 9711(c)(2) "option" for buying out related person liability for every controlled group member except the parent corporation is limited to operators described in Section 9704(j)(2) of the Coal Act.  Although the eligibility restrictions for this option in subsection (j)(2)(A) are turgid, it is obvious that this buyout option is designed to be

---

[5]   This precise situation is presented in the pending case *UMWA 1992 Benefit Plan v. U.S. Pipe And Foundry*, CA 1:16-cv-01577-ABJ (D.D.C., filed 08/03/2016) (1992 Plan seeking to compel 3 former non-coal subsidiaries of Walter Resources to assume responsibility for providing benefits to the Coal Act retirees of the Walter companies who were relieved of their Coal Act obligations in bankruptcy).

available to very few controlled groups with Coal Act liability – – and it is possible that only one could satisfy all the conditions.

Third, even if *Burlington Northern* were relevant for purposes of divining the "intent of Congress" in this context, the 2006 amendments specifically use "security" and "related persons" in the same sentence, whereas Section 9712(d)(1) does not.  Plaintiffs thereby have erected a false dichotomy between "mandatory" securitization established in 1992 and "optional" securitization introduced through the 2006 amendments.  A careful analysis of the 2006 Amendments provides neither clarity nor support for Plaintiffs' statutory construction argument.

### G.    The Plan Misapprehends the Nature of Arch Coal's Counterclaim.

Plaintiffs assert that Arch Coal lacks standing to seek a refund of excess security, because it is a stranger to Patriot's letter of credit.  This argument misapprehends the basis for Arch Coal's counterclaim for several reasons.  First, as discussed in Part B, *supra*, Arch Coal was not a stranger to Patriot's letter of credit.  Patriot was not a related person to Arch's 1988 last signatory operators, and it did not arrange for the Fifth Third Bank letter of credit because it had a statutory obligation to do so.  Rather, after it acquired Magnum, Patriot arranged for the letter of credit because Magnum was contractually obligated to Arch Coal to do so.  Indeed, Arch Coal would have had a cause of action against Magnum under the terms of the 2005 Stock Purchase Agreement had it or Patriot not arranged for security to be provided.

Second, and more to the point, Arch Coal seeks only to force the Plan to recognize and implement its own rules, which recognize excess security must be returned to the Arch Related Person Group (or to the individual employer plan Arch Coal maintains for the Arch retirees) because the Plan has no right to retain security greater than that authorized under the Act and Plan rules.  Arch Coal therefore seeks nothing more than a return of excess security such as provided for in Article XI(4)(F)(IV) of the Plan Document:

(IV)     To the extent that any amount…held by a trust described in paragraph (I) exceeds the amount required under subsection (D)…such amount may be used to pay the obligations of the plan maintained by such Operator under Section 9711 of the IRC.

ECF 19-5, at p. 15.

Similarly, Section 6.1(b) of the Master Trust specifies:

(b)     <u>Payment to Funding Employer's 9711 Plan</u>.   If, upon periodic review, the 1992 Plan determines, and certifies to the Bank, that the amount held in a Funding Employer's Account exceeds the amount required to be held as security under Article XI, Section (4) of the 1992 Plan Document, such excess amount may be transferred pursuant to Section 6.2 below to the Funding Employer's 9711 Plan.

ECF 19-6, p. 31.

It is undisputed that the proceeds from the Fifth Third Bank letter of credit exceed the $8,382,720 in security that the Plan requires for the Arch Coal retirees for 2017.  Whether the excess is returned to Arch for use in providing benefits for the retirees and dependents in its Section 9711 individual employer plan, or whether the excess is sent directly to the Plan Administrator of the Section 9711 Plan, is not a matter of significance to Arch Coal.  In either event the funds will be used to provide benefits to the individuals for whom the security was provided in the first instance.

Date:  September 20, 2017                     Respectfully submitted,

                                              _____/s/_____

                                              John R. Woodrum, D.C. Bar # 933457
                                              W. Gregory Mott, D.C. Bar # 438200
                                              OGLETREE, DEAKINS, NASH, SMOAK,
                                                & STEWART
                                              1909 K Street, N.W., Suite 1000
                                              Washington, D.C. 20006
                                              Telephone: (202) 887-0855
                                              Email:  john.woodrum@ogletree.com
                                              Email:  gregory.mott@ogletree.com

                                              *Counsel for Defendant and Counterclaim
                                              Plaintiff Arch Coal, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on September 20, 2017, a true and correct copy of the foregoing Opposition to Plaintiffs' Motion for Summary Judgment was served via CM/ECF upon the following:

Glenda S. Finch
Larry D. Newsome
Barbara E. Locklin
UMWA Health & Retirement Funds
Office of the General Counsel
2121 K Street, N.W., Suite 350
Washington, D.C.  20037
Telephone:  (202) 521-2238
Email:  gfinch@umwafunds.org
Email:  lnewsome@umwafunds.org

Stanley F. Lechner
Charles P. Groppee, Esq.
Morgan Lewis & Bockius, LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Telephone:  (202) 739-5681
Email:  charles.grouppee@morganlewis.com

John C. Goodchild, Esq.
Morgan Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103
Telephone:  (215) 963-5000
Email:  jgoodchild@morganlewis.com

John R. Mooney, Esq.
Paul A. Green, Esq.
Olga M. Thall
Mooney, Green, Saindon, Murphy & Welch, P.C.
1920 L Street, N.W., Suite 400
Washington, D.C.  20036
Telephone:  (202) 783-0010
Email:  jmooney@mooneygreen.com
Email:  pgreen@mooneygreen.com

*Counsel for Plaintiffs/Counterclaim-Defendants*

31206668.1

17